**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VEGAS DIAMOND PROPERTIES, LLC, a Nevada Limited Liability Company; and JOHNSON INVESTMENTS, LLC, a Nevada Limited Liability Company,<br><br>                         Plaintiffs,<br>vs.<br>LA JOLLA BANK, FSB, a California Corporation; ACTION FORECLOSURE SERVICES, INC., a California Corporation; and DOES I-X, inclusive,<br><br>                         Defendants. | CASE NO. 10cv1205-WQH-BGS<br><br>ORDER |

HAYES, Judge:

    The matter before the Court is the Motion to Dismiss Complaint under F.R.C.P. 12(b)(6) and Motion to Strike under F.R.C.P. 12(f) ("Motion to Dismiss"), filed by Defendant Federal Deposit Insurance Corporation ("FDIC"), as Receiver for La Jolla Bank, FSB ("La Jolla Bank"). (ECF No. 29).

**I.    Background**

    On January 8, 2010, Plaintiffs Vegas Diamond Properties, LLC ("Vegas Diamond") and Johnson Investments, LLC ("Johnson Investments") initiated this action by filing a Complaint in Nevada state court. (Pet. Removal, Ex. A, ECF No. 1-2).

    **A.    Allegations of the Complaint**

    In 2001 or 2002, Robert A. Dyson, Jr., an owner of various real estate businesses, began investing in a real estate development in Anza, California ("Anza Project"). *Id*. ¶ 39.

Doug Johnson, the "main principal" of Plaintiff Johnson Investments, "agreed to help Mr. Dyson obtain funds for the Anza Project using the Johnson Property." *Id*. ¶¶ 2, 40. In 2005, "Mr. Dyson arranged for Mr. Johnson to take a loan from Community National Bank ... in the amount of approximately $7.5 million, secured by the Johnson Properties." *Id*. ¶ 41. "The loan from Community Bank was for two years, with interest only payments at 7% interest, with the full balance due at the end of the two year period." *Id*. ¶ 42. "From the Community Bank Loan, Mr. Johnson gave the proceeds to Mr. Dyson at 12% interest for the two year term, with interest only payments and the full balance due at the end. There was no security for the loan made by Mr. Johnson to Mr. Dyson." *Id*. ¶ 43.

"At and prior to the time Mr. Dyson took the loan from Mr. Johnson, Mr. Dyson was encountering severe resistance and trouble in proceeding with the Anza Project." *Id*. ¶ 48. "La Jolla Bank was fully aware of the issues adverse to the Anza Project and the ultimate delays." *Id*. ¶ 49. "At one point in time, La Jolla Bank was going to co-locate one of its loan offices with one of Mr. Dyson's 'retail' real estate businesses in Las Vegas." *Id*. ¶ 24. Dyson attended "meetings and events" at La Jolla Bank on a weekly basis and Dyson went to "numerous dinners" with Rick Hall, a major principal of La Jolla Bank. *Id*. ¶¶ 26-27. "La Jolla Bank told Mr. Dyson that before they would venture another loan on the Anza Project, [Dyson] needed to find an investor or equity partner to meet certain so-called 'equity requirements' established by La Jolla Bank." *Id*. ¶ 34.

"At the end of the two year loan period from Mr. Johnson, Mr. Dyson was unable to pay off the balance of the loan." *Id*. ¶ 51. "Mr. Dyson never informed Mr. Johnson of the problems with the Anza Project." *Id*. ¶ 54. "Instead of paying off Mr. Johnson, Mr. Dyson brought La Jolla Bank into the transaction. A new loan was structured by La Jolla Bank for Mr. Johnson where the loan from Community Bank would be paid off and additional funds provided to Mr. Dyson." *Id*. ¶¶ 55-56.

Dyson met with Johnson and Danny Tarkanian, a principal in Plaintiff Vegas Diamond, and Dyson "provided [Johnson and Tarkanian] documents and oral representations ... painting a very strong financial picture for the Anza Project and high likelihood of return on [their]

investment." *Id.* ¶ 57; *see also id.* ¶ 59. "Mr. Dyson represented to Mr. Johnson and Mr. Tarkanian that proceeds from the loans would be used to obtain more property ... and by mapping the project," which would "increase the value of the Anza Project." *Id.* ¶ 66. "After several meetings with Mr. Dyson, Mr. Johnson and Mr. Tarkanian agreed to take loans from La Jolla Bank secured against the Johnson Properties and Vegas Diamond Property and in turn, to loan the proceeds to Mr. Dyson." *Id.* ¶ 68. "Without ever meeting, discussing or negotiating with anyone affiliated with La Jolla Bank, Johnson Investments received a $10,933,125 loan secured by the Johnson Propert[ies] and Vegas Diamond received a $14,568,750 loan secured by the Vegas Diamond Property from La Jolla Bank." *Id.* ¶ 62. "Mr. Johnson and his wife were required to personally guarantee the Johnson Investment Loan and Mr. Tarkanian, his wife, and his extended family were required to personally guarantee the Vegas Diamond loan." *Id.* ¶ 63.

"Under the terms of the various loan documents, both Johnson Investments and Vegas Diamond were to pay approximately 5% on the loan to La Jolla Bank. The terms of the two loans were for two years with interest only payments, with the full balances due at the end of the two year term." *Id.* ¶ 67. "Under the deal with Mr. Dyson, Mr. Dyson became obligated to Johnson Investments and Vegas Diamond for the full amount of the loans and in addition, [Dyson] agreed to pay approximately 11% interest." *Id.* ¶ 68. "As security for the loans made by Johnson Investments and Vegas Diamond to Mr. Dyson, Johnson Investments and Vegas Diamond a second [mortgage] on the Anza Project." *Id.* ¶ 76.

"Commensurate with the Vegas Diamond and Johnson Investments transactions with La Jolla Bank, Mr. Dyson was taking a $7.5 million loan from La Jolla Bank secured with a first deed of trust against the Anza Project. This loan from La Jolla Bank to Mr. Dyson was unknown to Johnson Investments and Vegas Diamond." *Id.* ¶¶ 73-74. "Unbeknownst to Mr. Johnson and Mr. Tarkanian, money from the loans made by La Jolla Bank to Johnson Investments and Vegas Diamond was used to pay off other loans Mr. Dyson had with La Jolla Bank." *Id.* ¶ 77. "As it turns out, the Anza Project which was only worth around $15 million, was securing loans in the amount of $32.5 million–the loan from La Jolla Bank to Mr. Dyson

1  secured by a first on the Anza Project and the loans made by ... La Jolla Bank to Johnson
2  Investments and Vegas Diamond secured by a second on the Anza Project." *Id*. ¶ 80.

3      "There were many irregularities with the loans from La Jolla Bank to Johnson
4  Investments and Vegas Diamond; all communications, document[] preparation, signatures and
5  other activities were done exclusively with Mr. Dyson and his accountant, Ben Wiggins." *Id*.
6  ¶ 88. "Neither Mr. Johnson nor Mr. Tarkanian were ever in any communication with or ever
7  contacted by La Jolla Bank; Mr. Dyson and Mr. Wiggins negotiated the terms of the loan from
8  La Jolla Bank to Johnson Investments and Vegas Diamond, provided and assisted in the
9  preparation of the loan applications, arranged for the appraisal, and took each loan document
10 to the home of the individual borrowers." *Id*. ¶ 89.

11     "Less than one month after the loans from La Jolla Bank to Johnson Investments and
12 Vegas Diamond closed, Mr. Dyson defaulted on the first interest payment." *Id*. ¶ 85. "[S]ix
13 months after the loan was funded, Mr. Dyson received water approval to map the Anza Project;
14 however, two weeks later, Mr. Dyson advised Johnson Investments and Vegas Diamond that
15 he was not going to map the project because he had run out of money." *Id*. ¶ 87.

16     As of September 9, 2009, "La Jolla Bank [was] subject to an 'Order to Cease and
17 Desist' issued [by] the Office of Thrift Supervision ('OTS'), United States of America. ...
18 [T]he OTS found that La Jolla Bank has engaged in unsafe and unsound banking practices
19 which have resulted in inadequate asset quality, earnings, liquidity planning, and capital levels
20 at ... La Jolla Bank." *Id*. ¶¶ 90, 92.

21     Dyson "cannot be sued in this matter at this time because he filed for bankruptcy on ...
22 October 31, 2009, and is still presently in bankruptcy." *Id*. ¶ 15.

23     "The Vegas Diamond Property and the Johnson Property are presently in foreclosure"
24 and a "Trustee's Sale is presently scheduled for both properties." *Id*. ¶¶ 10-11.

25     The Complaint alleges six causes of action: (1) fraudulent concealment against La Jolla
26 Bank; (2) negligence against La Jolla Bank; (3) civil conspiracy against La Jolla Bank; (4)
27 breach of the covenant of good faith and fair dealing against La Jolla Bank; (5) aiding and
28 abetting deceit against La Jolla Bank; and (6) "preliminary injunction against all Defendants."

*Id.* at 15. The Complaint's prayer for relief requests compensatory and punitive damages, attorney's fees and costs, and "an order granting a preliminary injunction against the Defendant immediately restraining Defendants from proceeding on any Trustee's Sale of the Plaintiffs' real properties." *Id.*

### B. Procedural History

On January 13, 2010, La Jolla Bank removed this action to the United States District Court for the District of Nevada. (ECF No. 1).

On April 21, 2010, the FDIC filed a motion to substitute FDIC as receiver and to change venue to the Southern District of California. (ECF No. 15). On June 3, 2010, the FDIC's motion was granted, and this action was transferred to this Court. (ECF No. 24).

On June 30, 2010, the FDIC filed the Motion to Dismiss. (ECF No. 29). The FDIC contends: "The Complaint should be dismissed in its entirety and with prejudice because [La Jolla Bank] did not have a duty to disclose or advise Plaintiffs of risks associated with investments for which the borrower requires funding. The borrower, not the bank, has a responsibility for conducting due diligence on the investment." (ECF No. 29-1 at 5). The FDIC contends that the claim for fraudulent concealment should be dismissed because Plaintiffs "have failed to allege the justifiable reliance element." *Id.* The FDIC contends that Plaintiffs "have also failed to allege any facts supporting causation or damages, and this is fatal to every cause of action." *Id.* at 6. The FDIC moves to strike the prayer for punitive damages because "punitive damages are unavailable against an agency of the United States." *Id.* The FDIC also moves to strike the request for attorney's fees because it "violates the American Rule." *Id.*

On July 26, 2010, Plaintiffs filed an opposition to the Motion to Dismiss. (S.D. Cal. Case No. 10cv980, ECF No. 18).[1] Plaintiffs contend:

> There are special circumstances extant that trigger La Jolla Bank's duty to disclose, including a fiduciary duty and exclusive knowledge of facts unavailable to the [Plaintiffs]. As a result of the special relationship between the

---

[1] Plaintiffs filed a single opposition to the FDIC's motions to dismiss in two related cases pending before this Court, 10cv980 and 10cv1205. The FDIC filed a single reply to the motions to dismiss.

> parties, La Jolla Bank had an absolute duty to disclose where it had access to information unavailable to the [Plaintiffs] and where La Jolla Bank stood to benefit and improve its own shaky financial posture through the loans. Towards that end, Dyson and Wiggins, ostensible agents for La Jolla Bank, negotiated with the [Plaintiffs] and oversaw the execution of the loan documents. Accordingly, La Jolla Bank is liable for the actions of its agents.

*Id.* at 28-29. Plaintiffs do not oppose the motion to strike the prayer for punitive damages, but contend that the request for attorney's fees is proper pursuant to California Civil Code § 1717.

On July 30, 2010, the FDIC filed a reply in support of the Motion to Dismiss. (S.D. Cal. Case No. 10cv980, ECF No. 19).

## II. Discussion

### A. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient factual allegations to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When considering a motion to dismiss, a court must accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1950 (2009). "[F]or a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted).

### B. Duty to Disclose

The FDIC contends that each of the causes of action in the Complaint must be dismissed because, under California law, "lenders do not have a duty of disclosure towards borrowers." (ECF No. 29-1 at 17).

Each of the Complaint's first five causes of action allege that La Jolla Bank is liable for "fail[ing] to disclose certain material facts" (Pet. Removal, Ex. A ¶ 111, ECF No. 1-2). The Complaint alleges that La Jolla Bank had a duty to disclose because of "special circumstances":

> Under these special circumstances, La Jolla Bank was imparted with a duty to

> disclose various material facts including but not limited to that it had a long-term, ongoing relationship with Mr. Dyson; monies from the loan transactions with the Plaintiffs were being applied to repay other loans La Jolla Bank had made to Mr. Dyson; there were problems with the Anza Project affecting its viability and financial stability; or that the entire transaction was dependent on Mr. Dyson's ability to repay the loans given the shaky financial condition Mr. Dyson created with La Jolla Bank - all facts unknown and undisclosed to the Plaintiffs.

*Id.* ¶ 103.

Under California law,[2] "absent special circumstances ... a loan transaction is an arms-length and there is no fiduciary relationship between the borrower and lender." *Oaks Mgmt. Corp. v. Superior Court*, 145 Cal. App. 4th 453, 466 (Cal. App. 2006) (citations omitted). "As a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1095-96 (1991) (citations omitted). "[F]or example, a lender has no duty to disclose its knowledge that the borrower's intended use of the loan proceeds represents an unsafe investment." *Id.* at 1096 (citing *Wagner v. Benson*, 101 Cal. App. 3d 27, 33-35 (1980)). "Liability to a borrower for negligence arises only when the lender 'actively participates' in the financed enterprise 'beyond the domain of the usual money lender.'" *Wagner*, 101 Cal. App. 3d at 35 (quoting *Connor v. Great Western Sav. & Loan Ass'n*, 69 Cal. 2d 850, 864 (1968)).

In *Connor*, the California Supreme Court held that a lender owed a duty of care to its borrowers because the lender "had the right to exercise extensive control of [a home construction] enterprise" and received "not only interest on its construction loans," but also additional fees and "protection from loss of profits." *Connor*, 69 Cal. 2d at 864; *see also Watkinson v. MortgageIT, Inc.*, No. 10cv327, 2010 WL 2196083, at *9 (S.D. Cal., June 1, 2010) (holding that the complaint alleged sufficient facts to show lender owed borrower a duty of care when borrower allegedly "misstated the value of the Property in order to induce him into acquiring the more riskier loan") (citation omitted). In arriving at its holding that a duty

---

[2] The parties do not dispute that California law applies.

existed, the California Supreme Court balanced the following factors:

> (1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to him, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm.

*Connor*, 69 Cal. 2d at 865 (quotation omitted).

The Complaint alleges the following: the loans from La Jolla Bank to Johnson Investments and Vegas Diamond contained "many irregularities" (ECF No. 1-2 ¶ 88); La Jolla Bank knew of Dyson's problems with the Anza Project and of the "perilous web created by Mr. Dyson," *id*. ¶ 84; La Jolla Bank established "equity requirements" for Dyson, *id*. ¶ 34; "[t]o meet La Jolla Bank's equity requirements," Dyson arranged for the Johnson Investments and Vegas Diamond loans, with the result that "monies from the loan transactions with the Plaintiffs were being used to repay other loans La Jolla Bank had made to Mr. Dyson" and Plaintiff's real properties were encumbered "to shore up La Jolla Bank's somewhat shaky financial position," *id*. ¶¶ 35, 115-16; "La Jolla Bank and Mr. Dyson had exclusive knowledge of these material facts" and La Jolla Bank and Dyson "actively concealed these material facts from the Plaintiffs at the time they were contemplating going forward with the loans," *id*. ¶¶ 104-05. Based upon the alleged knowledge and participation of La Jolla Bank in the Anza Project, the Court finds that the majority of the factors discussed in *Connor* weigh in favor of the existence of a duty on the part of La Jolla Bank. The Complaint alleges facts that La Jolla Bank had a voice in Dyson's activities and stood to benefit from the Johnson Investments and Vegas Diamond loans by more than just the interest charged. *See Connor*, 69 Cal. 2d at 864; *cf. First Interstate Bank of Cal. v. Winncrest Homes, Inc.*, 2003 WL 21734032, at *31 (Cal. Ct. App., July 25, 2003) (holding that "no special duty arose" when a lender "had no voice in [the property developer]'s activities and stood to benefit from the loan only by virtue of the interest charged"). The Complaint alleges that the Plaintiffs' loans from La Jolla Bank were designed to substantially improve La Jolla Bank's financial position at the expense of Plaintiffs' financial position. The facts alleged support the conclusion that La Jolla Bank's "involvement in the loan transaction ... exceed[ed] the scope of its conventional role as a mere

lender of money." *Nymark*, 231 Cal. App. 3d at 1096. The Complaint adequately alleges that this information was unknown and unavailable to Plaintiffs.[3]

The Court concludes that the Complaint adequately alleges facts which could give rise to a duty on the part of La Jolla Bank toward Plaintiffs pursuant to California law. Accordingly, the FDIC's Motion to Dismiss on the grounds that La Jolla Bank owed Plaintiffs no duty is denied.

**C.     Justifiable Reliance**

The FDIC contends that the fraudulent concealment cause of action should be dismissed because "the Fraudulent Concealment claim does not and cannot allege justifiable reliance." (S.D. Cal. Case No. 10cv980, ECF No. 19 at 9). The FDIC contends that "[t]his defect cannot be cured by amendment because judicially noticeable facts and allegations in the Complaint ... are inconsistent with justifiable reliance." *Id*. The FDIC requests that the Court take judicial notice of the fact that Danny Tarkanian is an attorney, and Douglas R. Johnson and Amy Tarkanian are real estate agents. The FDIC points to the allegations that Counterclaimants' companies own valuable real estate in Las Vegas, and Douglas R. Johnson "had already invested in the Anza Project for two years before [La Jolla Bank] became involved." (ECF No. 29-1 at 14). The FDIC contends: "These are not indicia of people who are vulnerable or unsophisticated. These facts reveal that Defendants knew exactly what they were doing and the risks involved." *Id*. (emphasis omitted).

"The elements of fraud ... are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity ...; (c) intent to defraud ...; (d) justifiable reliance; and (e) resulting damage." *Small v. Fritz Cos., Inc.*, 30 Cal. 4th 167, 173 (2003) (quotation omitted). Allegations of fraud must meet the heightened pleading standards of Federal Rule

---

[3] The FDIC submits documents indicating that Danny Tarkanian is an active member of the Nevada bar, and Douglas R. Johnson and Amy Tarkanian are both real estate agents registered in Nevada. The FDIC contends that the Complaint's allegation that Plaintiffs were "ignorant about loan priorities and disbursement of loan funds" is "inconsistent with what real estate salespersons and a lawyer should know, especially given that HUD-1 estimated closing statements are issued before closing which detail the loan disbursements." (ECF No. 29-1 at 14). The record does not contain a loan closing statement, and the Court declines to take judicial notice of the contents of a document which has not been submitted to the Court.

of Civil Procedure 9(b), which requires "specificity including an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). "[I]t is clear that a plaintiff in a fraudulent concealment suit will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim." *Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261, 1267 (C.D. Cal. 2007) (quotation omitted). "Because such a plaintiff is alleging a failure to act instead of an affirmative act, the plaintiff cannot point out the specific moment when the defendant failed to act. So, a ... fraud by concealment claim can succeed without the same level of specificity required by a normal fraud claim." *Id*. (quotation omitted).

Under California law, "[r]eliance exists when the misrepresentation or nondisclosure was an immediate cause of the plaintiff's conduct which altered his or her legal relations, and when without such misrepresentation or nondisclosure he or she would not, in all reasonable probability, have entered into the contract or other transaction." *Alliance Mortgage Co. v. Rothwell*, 10 Cal. 4th 1226, 1239 (1995) (citation omitted). "Except in the rare case where the undisputed facts leave no room for a reasonable difference of opinion, the question of whether a plaintiff's reliance is reasonable is a question of fact. However, whether a party's reliance was justified may be decided as a matter of law if reasonable minds can come to only one conclusion based on the facts." *Id*. (quotations omitted).

The Complaint alleges that La Jolla Bank and Dyson "had exclusive knowledge of ... material facts" and La Jolla Bank and Dyson "actively concealed these material facts from the Plaintiffs at the time they were contemplating going forward with the loans." (ECF No. 1-2 ¶¶ 104-05). Viewing these allegations in the light most favorable to Plaintiffs, the Court concludes that the allegations of the Complaint are sufficient to allege the element of justifiable reliance.

The Motion to Dismiss the fraudulent concealment cause of action is denied.

### D. Causation and Damages

The FDIC contends that Plaintiffs "have ... failed to allege any facts supporting

causation or damages, and this is fatal to every cause of action." (ECF No. 29-1 at 6).

The Complaint alleges that the undisclosed facts in La Jolla Bank's and Dyson's "exclusive" possession were "material" and were "actively concealed ... from the Plaintiffs at the time they were contemplating going forward with the loans." (ECF No. 1-2 ¶¶ 104-05). The Complaint alleges generally that "[a]s a direct and proximate result of La Jolla Bank's and Mr. Dyson's active and fraudulent concealment of these material facts from the Plaintiffs, Plaintiffs have been damaged in an amount in excess of $10,000.00, in an amount to be proven at the time of trial of this matter." *Id.* ¶ 106; *see also id.* ¶¶ 112, 118, 125, 130. The Complaint alleges that Dyson defaulted on the first interest payment to Plaintiffs. The Complaint also alleges that the Vegas Diamond Property and Johnson Properties are "subject to a Trustee's Sale." *Id.* ¶ 93.

The Court concludes that these allegations are sufficient to allege causation and damages. The Motion to Dismiss the Complaint on the grounds of failure to allege causation and damages is denied.

### E. Motion to Strike

The FDIC moves the Court to strike the Complaint's request for attorney's fees and punitive damages.

Plaintiffs contend that attorney's fees are recoverable pursuant to California Code § 1717, which provides in relevant part:

> In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.

Cal. Civ. Code § 1717(a).

"Civil Code section 1717 does not apply to tort claims; it determines which party, if any, is entitled to attorney fees on a contract claim only. As to tort claims, the question of whether to award attorney fees turns on the language of the contractual attorney fee provision...." *Gil v. Mansano*, 121 Cal. App. 4th 739, 743 (2004) (quotation omitted).

Each of the causes of action in the Complaint are tort claims, and neither Defendant has

filed a counterclaim in this case. Accordingly, California Civil Code § 1717 does not apply in this case. Plaintiffs have pointed to no applicable contractual provisions which allow Plaintiffs to recover attorney's fees. Accordingly, the request for attorney's fees is stricken.

In the opposition brief, Plaintiffs conceded that the request for punitive damages should be stricken because punitive damages are not available against the FDIC. (S.D. Cal. Case No. 10cv980, ECF No. 18 at 32). Accordingly, the request for punitive damages is stricken.

### III.    Conclusion

IT IS HEREBY ORDERED that the Motion to Dismiss Complaint under F.R.C.P. 12(b)(6) and Motion to Strike under F.R.C.P. 12(f) is granted in part and denied in part. (ECF No. 29). The motion to strike the request for attorney's fees and punitive damages is granted. In all other respects, the motion is denied.

DATED: October 4, 2010

*William Q. Hayes*
**WILLIAM Q. HAYES**
United States District Judge