# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VEGAS DIAMOND PROPERTIES, LLC, a Nevada Limited Liability Company; and JOHNSON INVESTMENTS, LLC, a Nevada Limited Liability Company,<br><br>                                   Plaintiffs,<br>    vs.<br>LA JOLLA BANK, FSB, a California Corporation; ACTION FORECLOSURE SERVICES, INC., a California Corporation; and DOES I-X, inclusive,<br><br>                                   Defendants. | CASE NO. 10cv1205-WQH-BGS<br><br>ORDER |

HAYES, Judge:

The matters before the Court are (1) the Ex Parte Motion to Dissolve Temporary Restraining Order, filed by the Federal Deposit Insurance Corporation ("FDIC"), as Receiver for Defendant La Jolla Bank, FSB ("La Jolla Bank") (ECF No. 31); (2) the Motion for Preliminary Injunction, filed by Plaintiffs Vegas Diamond Properties, LLC ("Vegas Diamond") and Johnson Investments, LLC ("Johnson Investments") (ECF No. 32-1); (3) the Motion to Renew or Continue Suit Pursuant to 12 U.S.C. § 1821(d), filed by Plaintiffs (ECF No. 39); and (4) the Request for Additional Briefing on the *D'Oench* Doctrine, filed by the FDIC (ECF No. 51).

**I.    Background**

On January 8, 2010, Plaintiffs initiated this action by filing a Complaint in Nevada state court. (ECF No. 1, Ex. A).

### A. Allegations of the Complaint

Vegas Diamond is the owner of a parcel of real property located near Barbara Street and Las Vegas Boulevard in Las Vegas, Nevada ("Vegas Diamond Property"). "The main principals of Vegas Diamond are Danny Tarkanian and the extended Tarkanian family." *Id.* ¶ 1. Johnson Investments is the owner of two parcels of real property ("Johnson Properties") near the same location as the Vegas Diamond Property. Doug Johnson is a principal of Johnson Investments.

In 2001 or 2002, Robert A. Dyson, an owner of various "real estate entities," began investing in a real estate development in Anza, California ("Anza Project"). *Id.* ¶ 12. In 2005, Dyson "was encountering severe resistance and trouble in proceeding with the Anza Project." *Id.* ¶ 48. "La Jolla Bank was fully aware of the issues adverse to the Anza Project and the ultimate delays." *Id.* ¶ 49.

Dyson met with Johnson and Tarkanian and "provided [Johnson and Tarkanian] documents and oral representations ... painting a very strong financial picture for the Anza Project and high likelihood of return on [their] investment." *Id.* ¶ 57; *see also id.* ¶ 59. "After several meetings with Mr. Dyson, Mr. Johnson and Mr. Tarkanian agreed to take loans from La Jolla Bank secured against the Johnson Properties and Vegas Diamond Property and in turn, to loan the proceeds to Mr. Dyson." *Id.* ¶ 61. "Without ever meeting, discussing or negotiating with anyone affiliated with La Jolla Bank, Johnson Investments received a $10,933,125 loan secured by the Johnson Property and Vegas Diamond received a $14,568,750 loan secured by the Vegas Diamond Property from La Jolla Bank." *Id.* ¶ 62. Johnson and his wife personally guaranteed the Johnson Investments loan, and Tarkanian, his wife, and his extended family personally guaranteed the Vegas Diamond loan. "Under the deal with Mr. Dyson, Mr. Dyson became obligated to Johnson Investments and Vegas Diamond for the full amount of the loans and in addition, [Dyson] agreed to pay approximately 11% interest." *Id.* ¶ 68.

"Unbeknownst to Mr. Johnson and Mr. Tarkanian, money from the loans made by La Jolla Bank to Johnson Investments and Vegas Diamond was used to pay off other loans Mr.

Dyson had with La Jolla Bank." *Id.* ¶ 77. "As it turns out, the Anza Project which was only worth around $15 million, was securing loans in the amount of $32.5 million–the loan from La Jolla Bank to Mr. Dyson secured by a first on the Anza Project and the loans made by ... La Jolla Bank to Johnson Investments and Vegas Diamond secured by a second on the Anza Project." *Id.* ¶ 80.

"La Jolla Bank is subject to an 'Order to Cease and Desist' issued before the Office of Thrift Supervision ('OTS').... The effective date of the Order is September 9, 2009.... [T]he OTS found that La Jolla Bank has engaged in unsafe and unsound banking practices which have resulted in inadequate asset quality, earnings, liquidity planning, and capital levels...." *Id.* ¶¶ 90, 92. Dyson "filed for bankruptcy on ... October 31, 2009, and is still presently in bankruptcy." *Id.* ¶ 15. "The Vegas Diamond Property and the Johnson Property are presently in foreclosure [and] [a] Trustee's Sale is presently scheduled for both properties." *Id.* ¶¶ 10-11.

The Complaint alleges six causes of action: (1) fraudulent concealment against La Jolla Bank; (2) negligence against La Jolla Bank; (3) civil conspiracy against La Jolla Bank; (4) breach of the covenant of good faith and fair dealing against La Jolla Bank; (5) aiding and abetting deceit against La Jolla Bank; and (6) "preliminary injunction against all Defendants." *Id.* at 15. The Complaint's prayer for relief requests compensatory and punitive damages, attorney's fees and costs, and "an order granting a preliminary injunction against the Defendants immediately restraining Defendants from proceeding on any Trustee's Sale of the Plaintiffs' real properties." *Id.*

### B. Procedural History

On January 8, 2010, Plaintiff filed an "Emergency Ex Parte Application for Temporary Restraining Order; and Motion for Preliminary Injunction." (ECF No. 32-1, Ex. 1). Plaintiffs sought to restrain "Defendants from proceeding on the Trustee's Sale presently scheduled for January 8, 2010, at 10:00 a.m." *Id.* at 1. Plaintiffs stated: "La Jolla Bank is subject to an Order to Cease and Desist. This could lead to an eventual collapse of the bank. Should this happen, monetary damages would be an inadequate remedy. This coupled with the uniqueness of real property further militates that allowing the Trustee sale to go forward would result in

irreparable harm." *Id.* at 20.

On January 11, 2010, after hearing arguments from counsel for Plaintiffs and Defendants, a Nevada state court judge issued the Temporary Restraining Order, secured by a cash bond in the amount of $10,000. In the Temporary Restraining Order, the court ordered that "the Defendants shall be enjoined from proceeding with a Trustee's Sale of the Plaintiffs' real properties until further order of the Court." (ECF No. 31-1 at 10).

On January 13, 2010, La Jolla Bank removed this action to the United States District Court for the District of Nevada. (ECF No. 1).

On February 9, 2010 and February 12, 2010, the Nevada district court granted Plaintiffs' and La Jolla Bank's stipulations that Defendants would continue to be temporarily restrained from conducting any trustee's sale of Plaintiff's real properties. (ECF Nos. 32-2, 32-3).

On April 21, 2010, the FDIC filed a motion to substitute the FDIC as receiver and to change venue to the Southern District of California. (ECF No. 15).

On May 7, 2010, the Nevada district court granted Plaintiffs' and the FDIC's stipulation that Defendants would continue to be temporarily restrained from conducting any trustee's sale of the Plaintiff's real properties. (ECF Nos. 32-4).

On May 20, 2010, Plaintiffs submitted "Proofs of Claim" to the FDIC for administrative review. (ECF No. 39 at 9).

On June 3, 2010, the FDIC's motion to substitute and change venue was granted, and this action was transferred to this Court. (ECF No. 24).

On June 30, 2010, the FDIC filed a motion to dismiss the Complaint and a motion to strike the prayer for attorney's fees and punitive damages. (ECF No. 29).

On July 16, 2010, the FDIC filed the Ex Parte Motion to Dissolve Temporary Restraining Order. (ECF No. 31). The FDIC contends that the Temporary Restraining Order must be dissolved because "injunctive relief is not allowed against the FDIC" pursuant to 12 U.S.C. § 1821(j). (ECF No. 31-1 at 3). The FDIC contends that "the TRO currently in place prevents the FDIC from performing its function as a receiver, which is to preserve and

conserve the assets of the seized bank." *Id.* at 5.

On July 22, 2010, Plaintiffs filed an opposition to the Ex Parte Motion to Dissolve Temporary Restraining Order. (ECF No. 32). Plaintiffs contend that the Temporary Restraining Order should not be dissolved because:

> [T]here has yet been no adjudication of the issue of whether the subject loans and real properties are even part of [La Jolla Bank]'s estate subject to administration by the FDIC. Where contracts are secured through fraud and concealment, the contracts are voidable. This Court must not create the scenario where Plaintiffs prevail on their claims of fraud and concealment, only to have lost the subject real properties thereby resulting in the irreparable harm to the already-harmed Plaintiffs.

*Id.* at 13.

On July 23, 2010, the FDIC filed a reply in support of the Ex Parte Motion to Dissolve Temporary Restraining Order. (ECF No. 33).

On August 5, 2010, the Court issued an Order setting the Ex Parte Motion to Dissolve Temporary Restraining Order for oral argument on August 26, 2010. (ECF No. 35).

On August 17, 2010, the FDIC rejected Plaintiffs' administrative claims. (ECF No. 39 at 9).

On August 18, 2010, Plaintiffs and the FDIC filed a joint motion to continue the date of the oral argument. (ECF No. 36). On August 24, 2010, the Court granted this joint motion and reset the oral argument for October 7, 2010. (ECF No. 38).

On September 16, 2010, Plaintiffs filed the Motion to Renew or Continue Suit Pursuant to 12 U.S.C. § 1821(d). (ECF No. 39). Plaintiffs contend:

> Pursuant to statute, once the FDIC rejected [Plaintiffs'] administrative claims, the Plaintiffs must seek a motion to renew or continue within 30 days of the rejection of their claims. Therefore, so as not to relinquish any rights in this action, the Plaintiffs, by way of this Motion and pursuant to 12 U.S.C. § 1821(d), seek renewal or continuation of the lawsuit presently pending in Case Number 3:10-cv-01205-WQH-BGS.

*Id.* at 17.

On September 27, 2010, the FDIC filed a Response to Motion to Renew or Continue Suit. (ECF No. 43). The FDIC stated that "[t]he FDIC supports the motion to renew the case." *Id.* at 3.

On October 4, 2010, the Court denied the FDIC's motion to dismiss the Complaint and

1 granted the FDIC's motion to strike the prayer for attorney's fees and punitive damages. (ECF
2 No. 44).

3 On October 7, 2010, the Court conducted oral argument on the Ex Parte Motion to
4 Dissolve Temporary Restraining Order. (ECF No. 47). At oral argument, Plaintiffs introduced
5 a letter dated September 20, 2010 from the FDIC to Vegas Diamond which states: "The
6 servicing of your commercial loan ... is being transferred from La Jolla Bank to KeyCorp Real
7 Estate Capital Markets, Inc.... The transfer of the servicing of your commercial loan does not
8 affect any term or condition of the loan documents, other than the terms directly related to the
9 servicing of your loan." (Pls.' Ex. A at 1). Plaintiffs contend that the September 20, 2010
10 letter divests the FDIC of standing to foreclose upon the Vegas Diamond Property.

11 On October 20, 2010, the FDIC filed a supplemental brief addressing the September 20,
12 2010 letter. The FDIC contends that the letter "only functioned to transfer the servicing of
13 Vegas Diamond's loan to KeyCorp, and the loan is still owned by the FDIC. KeyCorp is a
14 mere vendor of the FDIC, and any proceeds recovered by KeyCorp belong to the FDIC."
15 (ECF No. 50 at 3 (citing Heumann Decl. ¶ 3, ECF No. 52)).

16 On October 20, 2010, the FDIC filed a Request for Additional Briefing on the *D'Oench*
17 Doctrine. (ECF No. 51 at 1). The FDIC states:

18 If the Court is inclined to entertain any argument regarding the merits of the case, the FDIC requests additional briefing based on the '*D'Oench* doctrine,' as
19 provided in *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447 (1942), and codified at 12 U.S.C. § 1823(e). This doctrine stands for the proposition that oral side
20 agreements not reflected in a bank's loans are not actionable against the FDIC because banking regulators cannot reference them in evaluating the bank's assets
21 and liabilities.

22 *Id.* at 2.

23 **II.  Discussion**

24 The Financial Institutions Reform, Recovery and Enforcement Act of 1989, 12 U.S.C.
25 § 1811 *et seq*., "allows the FDIC to act as receiver or conservator of a failed institution for the
26 protection of depositors and creditors." *Sharpe v. FDIC*, 126 F.3d 1147, 1154 (9th Cir. 1997)
27 (citation omitted). "As receiver, the FDIC has broad authority to 'take over the assets ... and
28 conduct all business of the institution,' 'collect all obligations and money due the institution,'

and 'preserve and conserve the assets and property of such institution.'" *Sahni v. Am. Diversified Partners*, 83 F.3d 1054, 1058 (9th Cir. 1996) (quoting 12 U.S.C. § 1821(d)(2)(B)(i), (ii), (iv)). "Essential to these enumerated powers is the FDIC's ability to carry out its basic functions as a receiver free from judicial restraint, pursuant to 12 U.S.C. § 1821(j)." *Id.*

Section 1821(j) provides in relevant part: "[N]o court may take any action ... to restrain or affect the exercise of powers or functions of the [FDIC] as a conservator or a receiver." 12 U.S.C. § 1821(j). This section "bars restraint by the courts on the statutory powers of the FDIC when it acts as receiver." *Sahni*, 83 F.3d at 1058. "There are few exceptions to this jurisdictional bar. Indeed, 'the fact that the [Resolution Trust Corporation]'s actions might violate some other provision of law does not render the anti-injunction provision inapplicable.'" *Sharpe*, 126 F.3d at 1154 (quoting *Volges v. Resolution Trust Corp.*, 32 F.3d 50, 52 (2d Cir. 1994));[1] *see also Bank of Am. Nat'l Ass'n v. Colonial Bank*, 604 F.3d 1239, 1243 (11th Cir. 2010) (Section 1821(j) "has been interpreted broadly to bar judicial intervention whenever the FDIC is acting in its capacity as a receiver or conservator, even if it violates its own procedures or behaves unlawfully in doing so."). "[C]ourts have applied § 1821(j) to insulate the actions of the FDIC as receiver from restraint, even where the receiver is alleged to have violated state law and equitable remedies are available." *Sahni*, 83 F.3d at 1059-60 (citations omitted). Section 1821(j) insulates the actions of the FDIC as receiver from restraint even where an aggrieved party contends that no adequate alternative remedy exists. *See Ward v. Resolution Trust Corp.*, 996 F.2d 99, 104 (5th Cir. 1993) ("To hold that the lack of an adequate alternative remedy renders § 1821(j)'s bar against restraining orders inoperative would ... be tantamount to rendering the provision entirely ineffective.") (quotation omitted). However, "[t]he bar imposed by § 1821(j) does not extend to situations in which the FDIC as receiver asserts authority beyond that granted to it as a receiver." *Sharpe*, 126 F.3d at 1155; *see also Nat'l Trust for Historic Pres. v. FDIC*, 995 F.2d 238, 240 (D.C. Cir. 1993) (Section

---

[1] The FDIC and the Resolution Trust Corporation have the same powers under the relevant portions of the Financial Institutions Reform, Recovery and Enforcement Act. *See* 12 U.S.C. § 1441a(b)(4).

§ 1821(j) "shields only the exercise of powers or functions Congress gave to the FDIC; the provision does not bar injunctive relief when the FDIC has acted beyond, or contrary to, its statutorily prescribed, constitutionally permitted, powers or functions."), *judgment vacated*, 5 F.3d 567 (D.C. Cir. 1993), *and reinstated in relevant part*, 21 F.3d 469 (D.C. Cir. 1994).

The authority cited above indicates that "relevant question when applying section 1821(j) is whether the ... receiver is carrying out a statutory function or power. If so, no injunction may issue." *Furgatch v. Resolution Trust Corp.*, Civ. No. 93-20304, 1993 WL 149084, at *2 (N.D. Cal., Apr. 30, 1993). Courts have held that "the FDIC's broad powers as receiver include the power to foreclose on the property of a debtor held by the failed bank as collateral, and no court may enjoin the exercise of that power." *Freeman v. FDIC*, 56 F.3d 1394, 1399 (D.C. Cir. 1995) (citing *Lloyd v. FDIC*, 22 F.3d 335, 336-37 (1st Cir. 1994); *281-300 Joint Venture v. Onion*, 938 F.2d 35, 39 (5th Cir. 1991)); *see also Tillman v. Resolution Trust Corp.*, 37 F.3d 1032, 1036 (4th Cir. 1994) ("It is abundantly clear that the [Resolution Trust Corporation] is authorized to pursue its foreclosure of Tillman's property and that the courts may not interfere by entering any injunction to halt the sale."); *Telematics Int'l, Inc. v. NEMLC Leasing Corp.*, 967 F.2d 703, 705 (1st Cir. 1992) (holding that the district court could not enjoin the FDIC from foreclosing on a security interest); *Costa v. Resolution Trust Corp.*, 789 F. Supp. 43, 44-45 (D. Mass. 1991) (denying plaintiffs' motion for preliminary injunction restraining the Resolution Trust Corporation from proceeding with a foreclosure sale of condominium units of which plaintiffs were record owners, in satisfaction of purchase money loans allegedly affected by the fraud of depository institutions for which the Resolution Trust Corporation was receiver).

Based upon the record and the above authority, the Court finds that the FDIC's powers as receiver include the power to foreclose on Plaintiffs' properties. *See* 12 U.S.C. § 1821(d)(2)(B)(i), (ii), (iv). Accordingly, the Court is prohibited by § 1821(j) from entering a preliminary injunction enjoining the FDIC from foreclosing on Plaintiffs' properties.

The September 20, 2010 letter stating that the servicing of the Vegas Diamond loan was transferred to KeyCorp does not change this conclusion. The FDIC, acting as receiver, is

empowered to contract with the private sector for "loan portfolio asset management ... services." 12 U.S.C. § 1821(d)(2)(K). The evidence in the record shows that "Vegas Diamond's loan is still owned by the FDIC." (Heumann Decl. ¶ 3, ECF No. 52).

The Ex Parte Motion to Dissolve Temporary Restraining Order is granted, and the Motion for Preliminary Injunction is denied.

### III. Conclusion

IT IS HEREBY ORDERED that the Ex Parte Motion to Dissolve Temporary Restraining Order is GRANTED (ECF No. 31), and the Motion for Preliminary Injunction is DENIED (ECF No. 32-1). The unopposed Motion to Renew or Continue Suit Pursuant to 12 U.S.C. § 1821(d) is GRANTED. (ECF No. 39). The Request for Additional Briefing on the *D'Oench* Doctrine is DENIED as moot. (ECF No. 51).

DATED: October 29, 2010

*William Q. Hayes*
**WILLIAM Q. HAYES**
United States District Judge