# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VEGAS DIAMOND PROPERTIES, LLC, a Nevada Limited Liability Company; and JOHNSON INVESTMENTS, LLC, a Nevada Limited Liability Company, | CASE NO. 10cv1205-WQH-BGS ORDER |
| Plaintiffs, | |
| vs. | |
| LA JOLLA BANK, FSB, a California Corporation; ACTION FORECLOSURE SERVICES, INC., a California Corporation; and DOES I-X, inclusive, | |
| Defendants. | |

HAYES, Judge:

The matter before the Court is the Emergency Motion for Stay or Injunction Pending Appeal filed by Plaintiffs Vegas Diamond Properties, LLC ("Vegas Diamond") and Johnson Investments, LLC ("Johnson Investments"). (ECF No. 62).

## I.       Background

On January 8, 2010, Plaintiffs initiated this action by filing a Complaint in Nevada state court. (ECF No. 1, Ex. A).

### A.       Allegations of the Complaint

Vegas Diamond is the owner of a parcel of real property located near Barbara Street and Las Vegas Boulevard in Las Vegas, Nevada ("Vegas Diamond Property"). "The main principals of Vegas Diamond are Danny Tarkanian and the extended Tarkanian family." *Id.* ¶ 1. Johnson Investments is the owner of two parcels of real property ("Johnson Properties")

near the same location as the Vegas Diamond Property.  Doug Johnson is a principal of Johnson Investments.

In 2001 or 2002, Robert A. Dyson, an owner of various "real estate entities," began investing in a real estate development in Anza, California ("Anza Project"). *Id.* ¶ 12.  In 2005, Dyson "was encountering severe resistence and trouble in proceeding with the Anza Project." *Id.* ¶ 48.  "La Jolla Bank was fully aware of the issues adverse to the Anza Project and the ultimate delays." *Id.* ¶ 49.

Dyson met with Johnson and Tarkanian and "provided [Johnson and Tarkanian] documents and oral representations ... painting a very strong financial picture for the Anza Project and high likelihood of return on [their] investment." *Id.* ¶ 57; *see also id.* ¶ 59.  "After several meetings with Mr. Dyson, Mr. Johnson and Mr. Tarkanian agreed to take loans from La Jolla Bank secured against the Johnson Properties and Vegas Diamond Property and in turn, to loan the proceeds to Mr. Dyson." *Id.* ¶ 61.  "Without ever meeting, discussing or negotiating with anyone affiliated with La Jolla Bank, Johnson Investments received a $10,933,125 loan secured by the Johnson Propert[ies] and Vegas Diamond received a $14,568,750 loan secured by the Vegas Diamond Property from La Jolla Bank." *Id.* ¶ 62.  Johnson and his wife personally guaranteed the Johnson Investments loan, and Tarkanian, his wife, and his extended family personally guaranteed the Vegas Diamond loan.  "Under the deal with Mr. Dyson, Mr. Dyson became obligated to Johnson Investments and Vegas Diamond for the full amount of the loans and in addition, [Dyson] agreed to pay approximately 11% interest." *Id.* ¶ 68.

"Unbeknownst to Mr. Johnson and Mr. Tarkanian, money from the loans made by La Jolla Bank to Johnson Investments and Vegas Diamond was used to pay off other loans Mr. Dyson had with La Jolla Bank." *Id.* ¶ 77.  "As it turns out, the Anza Project which was only worth around $15 million, was securing loans in the amount of $32.5 million–the loan from La Jolla Bank to Mr. Dyson secured by a first on the Anza Project and the loans made by ... La Jolla Bank to Johnson Investments and Vegas Diamond secured by a second on the Anza Project." *Id.* ¶ 80.

"La Jolla Bank is subject to an 'Order to Cease and Desist' issued before the Office of Thrift Supervision ('OTS').... The effective date of the Order is September 9, 2009" *Id.* ¶ 90. Dyson "filed for bankruptcy on ... October 31, 2009, and is still presently in bankruptcy." *Id.* ¶ 15. "The Vegas Diamond Property and the Johnson Propert[ies] are presently in foreclosure" and a "Trustee's Sale is presently scheduled for [the] properties." *Id.* ¶¶ 10-11.

The Complaint alleges six causes of action: (1) fraudulent concealment against La Jolla Bank; (2) negligence against La Jolla Bank; (3) civil conspiracy against La Jolla Bank; (4) breach of the covenant of good faith and fair dealing against La Jolla Bank; (5) aiding and abetting deceit against La Jolla Bank; and (6) "preliminary injunction against all Defendants." *Id.* at 15. The Complaint's prayer for relief requests compensatory and punitive damages, attorney's fees and costs, and "an order granting a preliminary injunction against the Defendants immediately restraining Defendants from proceeding on any Trustee's Sale of the Plaintiffs' real properties." *Id.*

**B.    Procedural History**

On January 8, 2010, Plaintiffs filed an "Emergency Ex Parte Application for Temporary Restraining Order; and Motion for Preliminary Injunction." (ECF No. 32-1, Ex. 1). Plaintiffs sought to restrain "Defendants from proceeding on the Trustee's Sale presently scheduled for January 8, 2010, at 10:00 a.m." *Id.* at 1. Plaintiffs stated: "La Jolla Bank is subject to an Order to Cease and Desist. This could lead to an eventual collapse of the bank. Should this happen, monetary damages would be an inadequate remedy. This coupled with the uniqueness of real property further militates that allowing the Trustee sale to go forward would result in irreparable harm." *Id.* at 20.

On January 11, 2010, the Nevada state court issued a Temporary Restraining Order, secured by a cash bond in the amount of $10,000. In the Temporary Restraining Order, the court ordered that "the Defendants shall be enjoined from proceeding with a Trustee's Sale of the Plaintiffs' real properties until further order of the Court." (ECF No. 31-1 at 10).

On January 13, 2010, La Jolla Bank removed this action to the United States District Court for the District of Nevada. (ECF No. 1).

On February 9, 2010 and February 12, 2010, the Nevada district court granted Plaintiffs' and La Jolla Bank's stipulations that Defendants would continue to be temporarily restrained from conducting any trustee's sale of Plaintiff's real properties. (ECF Nos. 32-2, 32-3).

On April 21, 2010, the Federal Deposit Insurance Corporation ("FDIC") filed a motion to substitute the FDIC as receiver and to change venue to the Southern District of California. (ECF No. 15).

On May 7, 2010, the Nevada district court granted Plaintiffs' and the FDIC's stipulation that Defendants would continue to be temporarily restrained from conducting any trustee's sale of the Plaintiff's real properties. (ECF Nos. 32-4).

On June 3, 2010, the FDIC's motion to substitute and change venue was granted, and this action was transferred to this Court. (ECF No. 24).

On July 16, 2010, the FDIC filed an Ex Parte Motion to Dissolve Temporary Restraining Order. (ECF No. 31).

On August 18, 2010, Plaintiffs and the FDIC filed a joint motion to continue the date of oral argument on the Ex Parte Motion to Dissolve Temporary Restraining Order. (ECF No. 36). On August 24, 2010, the Court granted the joint motion and reset the oral argument for October 7, 2010, the date requested by the parties. (ECF No. 38).

On October 7, 2010, the Court conducted oral argument on the Ex Parte Motion to Dissolve Temporary Restraining Order. (ECF No. 47).

On October 20, 2010, the FDIC filed a supplemental briefs addressing new issues raised at oral argument. (ECF Nos. 50, 51).

On October 29, 2010, the Court issued an Order granting the Ex Parte Motion to Dissolve Temporary Restraining Order and denying the Motion for Preliminary Injunction. (ECF No. 54). The Court held that, pursuant to the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1821(j), the Court is prohibited from entering a preliminary injunction enjoining the FDIC from foreclosing on Plaintiffs' properties.

On November 1, 2010, Plaintiffs filed a Notice of Appeal of the Court's October 29,

2010 Order.  (ECF No. 55).

On January 14, 2011, Plaintiffs filed the Emergency Motion for Stay or Injunction Pending Appeal.  (ECF No. 62).  Plaintiffs assert that on January 10, 2011, Plaintiffs received notice of a trustee's sale of the properties at issue scheduled for January 31, 2011.  Plaintiffs move, pursuant to Federal Rule of Civil Procedure 62(a) and Federal Rule of Appellate Procedure 8(a), "for a stay of any FDIC foreclosure sale of the subject real properties pending resolution of [Plaintiffs'] appeal to the Ninth Circuit."  *Id*. at 11.  In the alternative, "[i]f this Court is not inclined to grant the Plaintiffs the relief requested, Plaintiffs request this Court grant a 30-day stay of the Trustee's Sales to afford Plaintiffs the opportunity to present a Motion to Stay to the Ninth Circuit Court of Appeals."  *Id*. at 38.  Plaintiffs contend that this is "a case of first impression" because it involves the loss of real properties instead of the loss of personal property or money.  (ECF No. 67 at 6).  Plaintiffs contend:

> This Court must not allow the FDIC to liquidate the subject real properties during the pendency of Plaintiffs' appeal.  Should the FDIC sell the real properties to a bona fide purchaser, the real properties will be permanently out of reach of Plaintiffs, and their entire lawsuit mooted.  Such actions would constitute irreparable harm.  When they prevail, Plaintiffs will stand to receive only a pro rata share of any pool of money compiled by the FDIC.  Loss of real property without full and fair compensation would also be irreparable harm.

> Plaintiffs have identified a clash between their Fifth Amendment property ownership rights and the FDIC's ability to liquidate bank assets as provided in FIRREA.  Congress could not have intended that FIRREA supersede the Fifth Amendment, and any interpretation that promotes such a statutory override of the Constitution cannot be tolerated.

> The only mechanism available to protect Plaintiffs pending appeal is maintenance of the order of restraint.  This Court should issue a stay pending appeal to shield Plaintiffs from unwarranted irreparable harm and violation of their constitutional rights.

*Id*. at 15-16.

On January 24, 2011, the FDIC filed an opposition to the Emergency Motion for Stay or Injunction Pending Appeal.  (ECF No. 65).  The FDIC contends:

> The FDIC is acting consistently with its statutory powers as receiver; therefore, the FDIC cannot be enjoined in any way, regardless of the merits of the case.... If the Court lacks jurisdiction to enjoin the FDIC in the first place, then the Court lacks jurisdiction to stay the dissolution of the TRO.

*Id*. at 9.  The FDIC contends that Plaintiffs fail to make a showing of any of the factors

governing the issuance of a stay pursuant to Federal Rule of Civil Procedure 62(a) and Federal Rule of Appellate Procedure 8(a).

## II.     Discussion

### A.     Standard of Review

"When a notice of appeal is filed, jurisdiction over the matters being appealed normally transfers from the district court to the appeals court." *Mayweathers v. Newland*, 258 F.3d 930, 935 (9th Cir. 2001) (citation omitted).  An exception exists under Federal Rule of Civil Procedure 62, which provides: "While an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." Fed. R. Civ. P. 62(c); *cf.* Fed. R. App. P. 8(a) ("A party must ordinarily move first in the district court for the following relief: (A) a stay of the judgment or order of a district court pending appeal; ... or (C) an order suspending, modifying, restoring, or granting an injunction while an appeal is pending.").  "The district court retains jurisdiction during the pendency of an appeal to act to preserve the status quo.  Rule 62(c) does not restore jurisdiction to the district court to adjudicate anew the merits of the case." *Mayweathers*, 258 F.3d at 935 (quotations omitted).  "The district court's exercise of jurisdiction should not materially alter the status of the case on appeal." *Id.* (quotation omitted).

"Under both [Rule 62(c) and Federal Rule of Appellate Procedure 8(a)], ... the factors regulating the issuance of a stay are generally the same: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987) (citations omitted); *see also Golden Gate Restaurant Ass'n v. City and County of San Francisco*, 512 F.3d 1112, 1115-16 (9th Cir. 2008) ("In ruling on a motion for a stay pending appeal, we employ two interrelated legal tests that represent the outer reaches of a single continuum.  At one end of the continuum, the moving party is required to show both a probability of success on the merits and the possibility of irreparable

injury....  At the other end of the continuum, the moving party must demonstrate that serious legal questions are raised and that the balance of hardships tips sharply in its favor.") (quotations omitted).

**B.    Success on the Merits**

"As receiver, the FDIC has broad authority to 'take over the assets ... and conduct all business of the institution,' 'collect all obligations and money due the institution,' and 'preserve and conserve the assets and property of such institution.'" *Sahni v. Am. Diversified Partners*, 83 F.3d 1054, 1058 (9th Cir. 1996) (quoting 12 U.S.C. § 1821(d)(2)(B)(i), (ii), (iv)). "Essential to these enumerated powers is the FDIC's ability to carry out its basic functions as a receiver free from judicial restraint, pursuant to 12 U.S.C. § 1821(j)." *Id*.

Section 1821(j) provides in relevant part: "[N]o court may take any action ... to restrain or affect the exercise of powers or functions of the [FDIC] as a conservator or a receiver."  12 U.S.C. § 1821(j).  This section "bars restraint by the courts on the statutory powers of the FDIC when it acts as receiver." *Sahni*, 83 F.3d at 1058.  "[C]ourts have applied § 1821(j) to insulate the actions of the FDIC as receiver from restraint, even where the receiver is alleged to have violated state law and equitable remedies are available." *Id.* at 1059-60 (citations omitted).  However, "[t]he bar imposed by § 1821(j) does not extend to situations in which the FDIC as receiver asserts authority beyond that granted to it as a receiver." *Sharpe v. FDIC*, 126 F.3d 1147, 1155 (9th Cir. 1997).

For the reasons stated in the Court's October 29, 2010 Order, the Court finds that the FDIC's powers as receiver include the power to foreclose on Plaintiffs' properties. *See* 12 U.S.C. § 1821(d)(2)(B)(i), (ii), (iv).  The Court concludes that it is prohibited by § 1821(j) from enjoining the FDIC from foreclosing on Plaintiffs' properties.  Even if § 1821(j) did not apply, Plaintiffs' Complaint only requests damages and injunctive relief.  The Complaint contains no request for rescission of the underlying loan, nor has Plaintiff alleged a willingness or ability to tender the loan proceeds. *Cf. Village Northridge Homeowners Ass'n v. State Farm Fire & Cas. Co.*, 50 Cal. 4th 913, 921 (2010) ("Rescission requires that the aggrieved party provide the other party to the agreement with prompt notice and an offer to restore the

consideration received, if any.") (quotation omitted).  The Court does not find that Plaintiffs have made a strong showing that they are likely to succeed on the merits of their appeal.

However, the Court finds that Plaintiffs have raised "serious legal questions" regarding the merits of their appeal.  *Golden Gate Restaurant Ass'n*, 512 F.3d at 1116.  In particular, Plaintiffs have raised serious legal questions regarding whether, in foreclosing upon Plaintiffs' properties prior to the adjudication of Plaintiffs' fraud claims in the underlying Complaint, "the FDIC has acted beyond, or contrary to, its statutorily prescribed, constitutionally permitted, powers or functions."  *Sharpe*, 126 F.3d at 1155; *see id*. ("Section § 1821(j) 'shields only the exercise of powers or functions Congress gave to the FDIC; the provision does not bar injunctive relief when the FDIC has acted beyond, or contrary to, its statutorily prescribed, constitutionally permitted, powers or functions.'") (quoting *Nat'l Trust for Historic Pres. v. FDIC*, 995 F.2d 238, 240 (D.C. Cir. 1993)).

### C.    Balance of Hardships

Plaintiffs have adequately shown that the foreclosure sale of the unique real properties at issue would cause Plaintiffs irreparable injury.  *Cf. Sundance Land Corp. v. Cmty. First Fed. Sav. & Loan Ass'n*, 840 F.2d 653, 661-62 (9th Cir. 1988) ("Denial of the injunction would, according to the allegations of the complaint, cause Sundance immediate, irreparable injury.  According to Sundance, it would lose the orchard property if Community were allowed to foreclose.  Since the property at issue is unique, Sundance's legal remedy–i.e., damages–is inadequate.  Sundance's complaint therefore meets the equitable criteria for stating a cause of action for injunctive relief.").  The FDIC contends that it will be injured by further delaying foreclosure of the properties at issue.  Even assuming the FDIC would be injured by further delay, the Court finds that "the balance of hardships tips sharply in [Plaintiffs'] favor." *Golden Gate Restaurant Ass'n*, 512 F.3d at 1116.

### D.    Public Interest

Plaintiffs contend that the public interest favors the imposition of a stay pending appeal because "[t]he general public is entitled to assurance that their constitutional property ownership rights are not steamrolled under by the FDIC as it wields FIRREA heedless of the

injury to the Plaintiffs." (ECF No. 62 at 33-34).  The FDIC contends that "the public interest is served when the FDIC is able to swiftly and efficiently wind up a failed bank's affairs." (ECF No. 65 at 20).

The FDIC has shown that a lengthy delay in its ability to foreclose would frustrate the congressional purpose of § 1821(j). *Cf. Telematics Int'l, Inc. v. NEMLC Leasing Corp.*, 967 F.2d 703, 705 (1st Cir. 1992) ("To enable the FDIC to move quickly and without undue interruption to preserve and consolidate the assets of the failed institution, Congress enacted a broad limit on the power of the courts to interfere with the FDIC's efforts.") (citing 12 U.S.C. § 1821(j)).  The Court finds that an injunction during the entire pendency of Plaintiffs' appeal would not serve the public interest.  However, the FDIC has stipulated to delays which effectively extended the state court injunction for approximately four months (from May 7, 2010 to July 16, 2010, and from August 18, 2010 to October 7, 2010).  The Court finds that an additional delay of one month to allow the Court of Appeals to decide whether to further enjoin foreclosure would serve the public interest.

**III.   Conclusion**

After consideration of the submissions of the parties and balancing of all the factors discussed above, the Court finds that Plaintiffs have failed to satisfy their burden of showing that they are entitled to an order enjoining foreclosure during the entire pendency of their appeal.  However, given the serious legal issues raised by the appeal, the balance of hardships which tip sharply in Plaintiffs' favor, and considerations of the public interest, the Court concludes that an injunction preventing the sale of Plaintiffs' properties is warranted for one month to allow Plaintiffs to apply to the Ninth Circuit Court of Appeals for an order enjoining the sale for a longer period.  The Court finds that no bond should be required for this one-month injunction.

IT IS HEREBY ORDERED that the Emergency Motion for Stay or Injunction Pending Appeal is GRANTED in part and DENIED in part.  (ECF No. 62).  Plaintiffs' request for a stay of any sale of the subject real properties pending resolution of Plaintiffs' appeal is denied. Plaintiffs' alternative request for a thirty-day stay of the trustee's sales to afford Plaintiffs the

opportunity to present a motion to stay to the Ninth Circuit Court of Appeals is granted.  The FDIC and its agents and assignees are ORDERED to refrain from selling any of the properties at issue for a period of thirty (30) days from the date of this Order.  After thirty days, this injunction shall be dissolved without further order of the Court.

DATED:  January 27, 2011

**WILLIAM Q. HAYES**
United States District Judge