1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VEGAS DIAMOND PROPERTIES, LLC, a Nevada Limited Liability Company,<br><br>                                   Plaintiff,<br><br>         vs.<br>LA JOLLA BANK, FSB, a California Corporation; FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for La Jolla Bank; OMAR BENJAMIN WIGGINS, an individual; and DOES I-X, inclusive,<br><br>                                   Defendants. | CASE NO. 10cv1205-WQH-BGS<br><br>ORDER |

HAYES, Judge:

The matter before the Court is the Motion to Dismiss First Amended Complaint filed by Defendant Federal Deposit Insurance Corporation ("FDIC") as Receiver for La Jolla Bank, FSB ("La Jolla Bank").  (ECF No. 97).

## BACKGROUND

On January 8, 2010, Plaintiffs Vegas Diamond Properties, LLC ("Vegas Diamond") and Johnson Investments, LLC ("Johnson Investments") initiated this action by filing a Complaint in Nevada state court against La Jolla Bank and Action Foreclosure Services ("Action Foreclosure").  (Ex. A, ECF No. 1-2).  On January 13, 2010, Defendants removed the action to the United States District Court for the District of Nevada.  (ECF No. 1).

1          On April 21, 2010, the FDIC filed a motion to substitute the FDIC as receiver for La

2    Jolla Bank and to change venue to the Southern District of California.  (ECF No. 15).  In May

3    2010, the claims contained in Plaintiff's complaint were submitted to the FDIC as part of the

4    mandatory administrative review process required under the Financial Institution Reform,

5    Regulation and Enforcement Act ("FIRREA").  (Decl. Douglas Heumann; ECF No. 97-2 ¶ 2).

6    The FDIC disallowed the claims.  On June 3, 2010, the FDIC was substituted as receiver for

7    La Jolla Bank, and the action was transferred to this Court.  (ECF No. 24).

8          On July 14, 2011, Plaintiffs filed a First Amended Complaint ("the Complaint") against

9    Defendants La Jolla Bank, the FDIC as receiver for La Jolla Bank, Action Foreclosure, Omar

10   Wiggins, Rick Hall, Martin Rodriguez, Frank Warren, R.W. Loveless, and Lynn Hein.  (ECF

11   No. 94).   The amended complaint alleged four new causes of action not contained in the

12   original complaint.   The four new causes of action were not submitted to the FDIC for

13   administrative review under FIRREA. (ECF No. 97-2 ¶ 2).

14         On July 28, 2011, Defendant FDIC filed a Motion to Dismiss the Complaint.  (ECF No.

15   97).  On August 15, 2011, Plaintiffs filed an opposition.  (ECF No. 98).  On August 22, 2011,

16   Defendant FDIC filed a reply.  (ECF No. 102).

17         On November 9, 2011, Defendant FDIC filed a Motion to File Documents Under Seal

18   in connection with their anticipated motion for summary judgment.  (ECF No. 113).   On

19   November 21, 2011, Defendant FDIC filed a Motion for Summary Judgment.  (ECF No. 115).

20   On December 27, 2011, Plaintiffs filed an opposition.  (ECF No. 126).  On January 3, 2012,

21   Defendant FDIC filed a reply.  (ECF No. 128).

22         On December 14, 2011, Defendant Frank Warren was dismissed from the case because

23   Plaintiffs did not oppose his motion to dismiss.  (ECF No. 124).  On January 5, 2012, the

24   claims of Plaintiff Johnson Investments were dismissed because Johnson Investments failed

25   to substitute counsel in compliance with Civil Local Rule 83.3.  (ECF No. 130).  On February

26   9, 2012, Defendants Action Foreclosure, Rick Hall, Martin Rodriguez, R.W. Loveless, and

27   Lynn Hein were dismissed because Plaintiff failed to serve those defendants.  (ECF No. 136).

28

1

**ALLEGATIONS OF THE COMPLAINT**

2        In 2001 or 2002, Robert Dyson, Jr., an owner of various real estate businesses, began

3   investing in a real estate development in Anza, California ("Anza Project").  (ECF No. 94 ¶¶

4   44-48).  Dyson had a pre-existing financial relationship with La Jolla Bank that included

5   personal relationships with La Jolla Bank owners and officers including Frank Warren, Rich

6   Hall, Martin Rodriguez, R.W. Loveless, and Lynn Hein.  *Id*. ¶¶ 36-43.  La Jolla Bank made

7   a number of loans to Dyson, and Dyson attended weekly meetings and events at La Jolla Bank.

8   *Id*. ¶¶ 31-41.  Dyson approached La Jolla Bank to obtain loans for the Anza Project, but La

9   Jolla Bank officials told Dyson that he needed to find an investor or equity partner to meet

10  "equity requirements" before La Jolla Bank would lend him funds for the project.  *Id*. ¶ 49.

11       Dyson approached Doug Johnson, a principal of Johnson Investments, who agreed to

12  help Dyson obtain funds for the Anza Project using Johnson Investments' properties ("Johnson

13  Properties") as collateral.  *Id*. ¶¶ 50-55.  In 2005, Dyson arranged for Johnson to take a loan

14  from Community National Bank in the amount of approximately $7.5 million secured by

15  Johnson Properties.  *Id*. ¶ 56.  The loan to Johnson was for two years with 7% interest-only

16  payments and the full balance due at the end of the two year period.  *Id*. ¶ 57.  Johnson loaned

17  the Community National Bank loan proceeds to Dyson at 12% interest-only payments for two

18  years, with the full balance due at the end of the two year period.  Dyson provided no security

19  for this loan.  *Id*. ¶ 58.  Using the loan proceeds from Johnson, Dyson was able to obtain

20  additional funds from La Jolla Bank for the Anza Project.  *Id.* ¶ 62.

21       Prior to obtaining the loan from Johnson, Dyson had encountered "severe resistance and

22  trouble in proceeding with the Anza Project," including community fighting over the project,

23  resistance from local Native American tribes, water rights disputes, and delays in the mapping

24  process. *Id*. ¶ 63.  As a lender to Dyson for the Anza Project, La Jolla Bank was aware of these

25  adverse issues and delays.  *Id.* ¶ 64.  Dyson never informed Johnson of the problems with the

26  project, which persisted through the two year loan period. *Id.* ¶¶ 67-69.  At the end of the loan

27  period, Dyson was unable to pay off the balance of the loan to Johnson.  *Id.* ¶ 66.

28

1       In lieu of paying off the loan to Johnson, Dyson brought La Jolla Bank, various Bank

2   officers, and Dyson's accountant Omar Wiggins into the transaction, structuring a new loan

3   to Johnson with which to pay off the Community National Bank loan and to make additional

4   funds available to Dyson for the Anza Project.  *Id.* ¶¶ 5, 70-71.

5       Johnson then introduced Dyson to Danny Tarkanian, a principal in Plaintiff Vegas

6   Diamond, who agreed to help Dyson obtain funds for the Anza Project using Vegas Diamond's

7   property ("Vegas Diamond Property") as collateral. *Id.* ¶¶ 73, 76.  During negotiations for this

8   loan, Dyson made representations to both Johnson and Tarkanian that painted "a very strong

9   financial picture for the Anza Project."  *Id.* ¶ 72.  Dyson failed to discuss with Johnson and

10  Tarkanian the problems and delays Dyson was experiencing with the project.  *Id.* ¶ 75.

11  Without meeting, discussing, or negotiating with anyone affiliated with La Jolla Bank, Johnson

12  Investments and Vegas Diamond each received multi-million dollar loans from La Jolla Bank

13  secured by their respective properties.  *Id.* ¶ 77.  Johnson and his wife personally guaranteed

14  the loan to Johnson Investments; Tarkanian, his wife, and his extended family personally

15  guaranteed the loan to Vegas Diamond.  *Id*. ¶ 79.

16      Under the terms of the loan documents with La Jolla Bank, Johnson Investments and

17  Vegas Diamond were to pay approximately 5% interest-only for two years with full balances

18  due at the end of the two year term.  *Id*. ¶ 83.  Under their respective deals with Dyson, Dyson

19  was to pay Johnson Investments and Vegas Diamond approximately 11% interest-only for two

20  years, with the full balances due at the end of the two year term.  *Id*. ¶¶ 84-85.

21      "During the time Vegas Diamond and Johnson Investments were securing their

22  respective loan transactions with LJB, unbeknownst to Mr. Johnson and Mr. Tarkanian, Dyson

23  was taking a $7.5 million loan from [La Jolla Bank] secured with a first deed of trust against

24  the Anza Project." *Id*. ¶ 89.  "Unbeknownst to Mr. Johnson and Mr. Tarkanian, Dyson used

25  the loan proceeds from Johnson Investments and Vegas Diamond to pay off other loans Dyson

26  had with [La Jolla Bank]."  *Id.* ¶ 92.  Within a month after the loans from La Jolla Bank to

27  Johnson Investments and Vegas Diamond closed, Dyson defaulted on his first interest

28  payments to both the companies.  *Id*. ¶ 101.

1   "[T]e Anza Project, which was only worth around $15 million, was securing loans in

2   the amount of $32.5 million – the loan from [La Jolla Bank] to Dyson secured by a first [deed

3   of trust] on the Anza Project and the loans made to Dyson by Johnson Investments and Vegas

4   Diamond secured by a second [deed of trust] on the Anza Project." *Id*. ¶ 95.

5       "[A]ll communications, negotiations, documents preparation, signatures and other

6   activities [regarding the loans from La Jolla Bank to Johnson Investments and Vegas Diamond]

7   were done exclusively with Dyson and Wiggins." *Id*. ¶ 104.  "Neither Mr. Johnson nor Mr.

8   Tarkanian were ever in any communication or other contact with [La Jolla Bank]... Dyson and

9   Wiggins negotiated the terms of the loans from [La Jolla Bank] to Johnson Investments and

10  Vegas Diamond, provided and assisted in the preparation of the loan applications, arranged for

11  the appraisal, and took each loan document to the home of the individual borrowers." *Id*. ¶

12  106. "Dyson and Wiggins, as well as [La Jolla Bank]... solely controlled what documents and

13  information were made available to Mr. Johnson and Mr. Tarkanian in conducting due

14  diligence regarding their respective loans." *Id*. ¶ 107.

15      La Jolla Bank failed to disclose to Plaintiff that La Jolla Bank "had a long-term

16  relationship with Dyson; monies from the loan transactions with the Plaintiffs were being used

17  to repay other loans [La Jolla Bank] had made to Dyson; there were problems with the Anza

18  Project affecting its viability and financial stability; [and] the entire transaction was dependent

19  on Dyson's ability to repay the loans given the shaky financial web Dyson created through

20  Wiggins [and La Jolla Bank]...." *Id*. ¶¶ 134, 142, 147, 162, 167.

21      As of September 9, 2009, La Jolla Bank was subject to an "Order to Cease and Desist"

22  issued by the Office of Thrift Supervision. *Id*. ¶ 112.  The Office of Thrift Supervision found

23  that La Jolla Bank had engaged in unsafe and unsound banking practices which resulted in

24  inadequate asset quality, earnings, liquidity planning, and capital levels. *Id*. ¶ 112. The Office

25  of Thrift Supervision found that La Jolla Bank had been aware of potential self-dealing and

26  other misconduct by certain bank officers. *Id*. ¶ 119.  On or about February 19, 2010, La Jolla

27  Bank was notified that the Office of Thrift Supervision was closing La Jolla Bank and that the

28  FDIC was appointed as receiver. *Id*. ¶ 115.

1    The Vegas Diamond Property and the Johnson Properties were sold at Trustee's Sales

2  on or about March 2011. *Id.* ¶ 121.  "Action Foreclosure failed to publish and post the

3  appropriate notices prior to conducting the Trustee's Sales...." *Id.* ¶ 122.

4    The Complaint alleges nine causes of action against Defendant La Jolla Bank / FDIC:

5  (1) fraudulent concealment; (2) negligence for failing to disclose material facts; (3) civil

6  conspiracy; (4) breach of the implied covenant of good faith and fair dealing; (5) aiding and

7  abetting deceit; (6) intentional misrepresentation; (7) equitable relief; (8) tortious breach of the

8  implied covenant of good faith and fair dealing; and (9) negligence regarding notice of the

9  Trustee Sale.  Plaintiff requests compensatory and punitive damages, cancellation of the

10  Trustee Sale, attorney's fees and costs, and such further relief as the Court deems proper.

11                                          **DISCUSSION**

12    Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim

13  upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Federal Rule of Civil Procedure

14  8(a) provides: "A pleading that states a claim for relief must contain... a short and plain

15  statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

16  Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal

17  theory or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police*

18  *Dep't*, 901 F.2d 696, 699 (9th Cir. 1990); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)

19  ("A Rule 12(b)(6) motion tests the legal sufficiency of a claim.").  "[F]or a complaint to

20  survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences

21  from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."

22  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted).

23  **I.    Dismissal Pursuant to 12 U.S.C. Section 1823(e)**

24    Defendant FDIC contends that the claims of Plaintiff Vegas Diamond are based on

25  fraudulent inducement and misrepresentations that occurred outside the loan documents and

26  that Plaintiff cannot recover for such claims alleged against the FDIC as a receiver. Defendant

27  FDIC contends that "the entire action should be barred by 12 U.S.C. § 1823(e), as Plaintiffs

28  are litigating against the FDIC based on side agreements with Dyson and [La Jolla Bank],

1    which are not contained within the loan documents."  (ECF No. 97-1 at 6).

2         Plaintiff contends that the claims against FDIC seek redress for "the direct fraud by [La

3    Jolla Bank] and that La Jolla Bank's "fraudulent actions in rendering the loans are themselves

4    ample and sufficient grounds to sustain an action for damages."  (ECF No. 98 at 11-12).

5    Plaintiff contends that La Jolla Bank "willfully failed to tell and withheld" information from

6    Plaintiff "that Dyson was encountering severe resistance and trouble in proceeding with the

7    Anza Project.... and the entire transaction was dependent on Dyson's ability to repay the

8    loans...." *Id.* at 14-15.  Plaintiff contends that "special circumstances" imposed a duty on La

9    Jolla Bank to disclose such material facts, including that "it had a relationship with Dyson [and

10   that] monies from the loan transactions with the Plaintiffs were being used to repay other loans

11   [La Jolla Bank] had made to Dyson." *Id*. at 13-15.  Plaintiff contends that it is not attempting

12   to rely on any side agreements to vary the loan documents, but that "information that was ***not***

13   provided to the Plaintiffs... constitutes the problem" in this case.  *Id.* at 12-13 (emphasis in

14   original).

15        Section 1823(e) bars the use of extrinsic agreements to diminish or defeat the FDIC's

16   interest in an asset, unless the agreement documents meet the specific requirements laid out

17   in the statute.  12 U.S.C. § 1823(e) provides that:

18       No agreement which tends to diminish or defeat the interest of the Corporation
         in any asset acquired by it under this section or section 1821 of this title, either
19       as security for a loan or by purchase or as receiver of any insured depository
         institution, shall be valid against the Corporation unless such agreement (A) is
20       in writing, (B) was executed by the depository institution and any person
         claiming an adverse interest thereunder, including the obligor,
21       contemporaneously with the acquisition of the asset by the depository institution,
         (C) was approved by the board of directors of the depository institution or its
22       loan committee, which approval shall be reflected in the minutes of said board
         or committee, and (D) has been, continuously, from the time of its execution, an
23       official record of the depository institution.

24        An agreement that does not comply with § 1823(e) shall not form the basis of a claim

25   against the FDIC as receiver. 12 U.S.C. § 1821(d)(9)(A).[1]

26

27

28        [1]12 U.S.C. § 1821(d)(9)(A) provides that "any agreement which does not meet the requirements set
     forth in section 1823(e) of this title shall not form the basis of, or substantially comprise, a claim against the
     receiver or the Corporation."

1        In *Langley v. FDIC*, 484 U.S. 86, 108 S.Ct. 396 (1987), the Supreme Court held that

2 an "agreement," which cannot diminish the FDIC's interest in acquired assets, is not limited

3 to express promises or representations but includes unrecorded misrepresentations and

4 conditions to performance.  *Langley v. FDIC*, 484 U.S. 86, 108 S.Ct. 396 (1987).    The

5 Supreme Court concluded that "§ 1823(e) bars the defense that the [promissory] note was

6 procured by fraud in the inducement even when the fraud did not take the form of an express

7 promise." *Id.* at 90.

8        In *Brookside Associates v. Rifkin*, debtors brought action against Resolution Trust

9 Corporation as receiver for the bank that sold condominiums to the debtors.  *Brookside*

10 *Associates v. Rifkin*, 49 F.3d 490 (9th Cir. 1995).  The debtors alleged that they were mislead

11 into the purchase based on fraudulent misrepresentations and concealment regarding the

12 appraisal value of the condominiums.  Specifically, debtors alleged that the bank and its

13 officers stated a higher appraisal value than was accurate and refused to disclose the accurate

14 appraisal value upon request by debtors.  The Court of Appeals for the Ninth Circuit applied

15 § 1823(e) and the Supreme Court's decision in *Langley* to conclude that § 1823(e) barred the

16 claims for fraudulent and negligent concealment against Resolution Trust Corporation as

17 receiver.  The Court of Appeals concluded that "Brookside's allegations describe just the sort

18 of secret agreement in relation to a loan that *Langley* found violated the public policy behind

19 the statute."  *Id*. at 496.  The Court of Appeals concluded that Brookside cannot avoid

20 application of the statute "by recasting the bank officers' active misrepresentation that the

21 appraisal value was \$1.78 million as an omission of the fact that the actual appraisals were

22 lower. That logic would reward artful pleading and thwart the... policy, as nearly every

23 fraudulent misstatement can also be characterized as a deceitful concealment of the true state

24 of affairs."  *Id.* at 497-98.  The Court concluded that Brookside "could have protected itself

25 by insisting that the 'secret agreement'-the false appraisal-be incorporated in the loan

26 documentation... [and that § 1823(e)] bars Brookside's lawsuit." *Id.* at  497.

27        Since *Langley*, "a line of federal decisions extends section 1823(e) to claims for fraud

28 and misrepresentation based on non-disclosures of fact.... These cases conclude that an

10cv1205-WQH-BGS

1  unlawful omission is a form of 'agreement' to which section 1823(e) applies." *Avirez, Ltd. v.*

2  *Resolution Trust Corp.*, 876 F.Supp. 1135, 1141 (C.D.Cal. 1995) citing *McCullough v. FDIC*,

3  987 F.2d 870 (1st Cir. 1993); *FDIC v. Bell*, 892 F.2d 64 (10th Cir. 1989), *cert. dismissed,* 496

4  U.S. 913 (1990); *FDIC v. Hudson*, 800 F.Supp. 867 (N.D.Cal. 1990).   "[S]ection 1823(e)

5  applies as much to misrepresentation claims based upon non-disclosures as to those based upon

6  affirmative assertions."   *Avirez,* 876 F.Supp. at 1141.   Section 1823(e) "embraces both

7  affirmative claims and defenses and extends to arguments asserted in terms of contract or tort."

8  *F.D.I.C. v. LeBlanc*, 85 F.3d 815, 821 (1st Cir. 1996); *see also McCaugherty,* 772 F.Supp. at

9  1136 (observing that other courts have held section 1823(e) to "preclude the assertion of

10 affirmative claims against the FDIC for torts of misrepresentation or breach of fiduciary duty

11 where the tort is based on a secret, side agreement not reflected in [bank] records.").

12        In this case, Plaintiff asserts causes of action for fraudulent concealment, negligence,

13 civil conspiracy, breach of the implied covenant of good faith and fair dealing, tortious breach

14 of the implied covenant of good faith and fair dealing, aiding and abetting deceit, intentional

15 misrepresentation, and equitable relief.   The factual allegations underlying all of Plaintiff's

16 claims are based on Dyson's misrepresentations regarding the financial condition of the Anza

17 Project and La Jolla Bank's failure to disclose material facts regarding the Anza Project and

18 its relationship with Dyson.

19        Plaintiff alleges that Dyson misrepresented that the proceeds from the loans would be

20 used to obtain more property and mapping for the Anza Project, and that Dyson would repay

21 the loans in two years.  (ECF No. 94 ¶¶ 81-85).  Plaintiff alleges that Dyson intentionally

22 misrepresented a "very strong financial picture for the Anza Project," when, in fact, the project

23 was facing "many and varied problems and difficulties."  (ECF No. 94 ¶¶ 74, 75).  Plaintiff

24 alleges that La Jolla Bank failed to disclose material facts that La Jolla Bank "had a long-term

25 relationship with Dyson; monies from the loan transactions with the Plaintiffs were being used

26 to repay other loans [La Jolla Bank] had made to Dyson; there were problems with the Anza

27 Project affecting its viability and financial stability; [and] the entire transaction was dependent

28 on Dyson's ability to repay the loans given the shaky financial web Dyson created through

1 Wiggins [and La Jolla Bank]...."  (ECF No. 94 ¶¶ 134, 142, 147, 162, 167).

2        The Court concludes that all of the causes of action in the Complaint, whether in terms

3 of contract or tort law, allege "fraud and misrepresentation based on non-disclosures of fact."

4 *Avirez,* 876 F.Supp. at 1141.  However, omissions constitute "a form of 'agreement' to which

5 section 1823(e) applies," and none of the alleged misrepresentations or omissions were

6 included in writing in the loan documents. *Id.*  The factual allegations alleged by Plaintiff in

7 the Complaint do not comply with § 1823(e) and therefore cannot form the basis of a claim

8 against the FDIC as receiver.  Viewed in the light most favorable to Plaintiff, the allegations

9 of the Complaint fail to state a claim that shows legal entitlement to relief because Plaintiff's

10 claims are subject to dismissal under 15 U.S.C. § 1823(e).

11 **II.     Dismissal for Failure to Exhaust Administrative Remedies**

12        Defendant FDIC additionally contends that this Court lacks subject matter jurisdiction

13 over the sixth through ninth causes of action alleged in Plaintiff's amended complaint because

14 Plaintiff failed to comply with the administrative review process required by FIRREA as a

15 prerequisite to judicial review.  Plaintiff contends that it was not required to exhaust the

16 administrative claims process because such action would be futile.

17        Section 1821(d) of FIRREA provides the FDIC, acting as receiver to a failed depository

18 institution, with authority to determine claims against that institution. 12 U.S.C. §

19 1821(d)(3)(A).  If a claimant submits a timely claim to the FDIC, the FDIC must determine

20 whether to allow or disallow the claim. 12 U.S.C. § 1821(d)(5)(A)(I).  If the FDIC fails to

21 determine the claim or disallows the claim within 180 days, the claimant then has 60 days to

22 request an administrative review "or file suit on such claim (or continue an action commenced

23 before the appointment of the receiver) in the district or territorial court of the United States...."

24 12 U.S.C. § 1821(d)(6)(A).

25 ///

26 ///

27 ///

28 ///

              10cv1205-WQH-BGS

1   No court has jurisdiction over the claim until the exhaustion of this administrative

2   process. 12 U.S.C. § 1821(d)(13)(D).[2]  "The text of § 1821(d)(13)(D) plainly states that any

3   claim or action that asserts a right to assets of a failed institution is subject to exhaustion."

4   *McCarthy v. F.D.I.C.*, 348 F.3d 1075, 1077 (9th Cir. 2003).   "[N]o jurisdiction exists if a

5   claimant does not exhaust FIRREA's administrative process." *Intercontinental Travel*

6   *Marketing, Inc. v. F.D.I.C.*, 45 F.3d 1278, 1282 (9th Cir. 1994) citing *Henderson v. Bank of*

7   *New England*, 986 F.2d 319, 320-21 (9th Cir. 1993).

8   While futility "is a well-established principle in administrative common law absent

9   Congressional directive.... ['w]here a statute specifically requires exhaustion, the requirement

10  is not excused based merely [on] a judicial conclusion of futility.'" *Fones4All Corp. v. F.C.C.*,

11  550 F.3d 811, 818 (9th Cir. 2008) quoting *Sun v. Ashcroft*, 370 F.3d 932, 941 (9th Cir. 2004).

12  Courts should "not read futility or other exceptions into statutory exhaustion where Congress

13  has provided otherwise." *Id*. citing *Booth v. Churner*, 532 U.S. 731, 741 n. 6 (2001).

14  Plaintiff submitted all of the claims contained in the original January 2010 complaint

15  to the FDIC for administrative review.  However, Plaintiff did not submit the new claims of

16  the amended July 2011 complaint to the FDIC for administrative review.  Exhaustion of this

17  administrative process is specifically required under FIRREA.  According to 12 U.S.C. §

18  1821(d)(13)(D), the Court does not have jurisdiction over claims that have not been exhausted

19  through the administrative process.  To the extent that any of Plaintiff's sixth through ninth

20  causes of action do not rely on fraud or allegations of non-disclosure, the claims are subject

21  to dismissal for failure to comply with administrative review requirements of FIRREA.

22  ///

23  ///

24  ///

25  ///

26

27   [2] 12 U.S.C. § 1821(d)(13)(D) provides that: "Except as otherwise provided in this subsection, no court shall have jurisdiction over (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed

28  receiver, including assets which the Corporation may acquire from itself as such receiver; or (ii) any claim relating to any act or omission of such institution or the Corporation as receiver."

10cv1205-WQH-BGS

1

**CONCLUSION**

2        IT IS HEREBY ORDERED that the Motion to Dismiss Complaint filed by Defendant

3  Federal Deposit Insurance Corporation, as receiver for La Jolla Bank, (ECF No. 97) is

4  GRANTED.   The claims against Defendants La Jolla Bank, FSB, and Federal Deposit

5  Insurance Corporation, are dismissed.

6        The Motion for Summary Judgment (ECF No. 115) and related Motion to File

7  Documents Under Seal (ECF No. 113) filed by Defendant Federal Deposit Insurance

8  Corporation, as receiver for La Jolla Bank, are DENIED as moot.

9  DATED:  February 28, 2012

10

                    **WILLIAM Q. HAYES**
11                  United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

10cv1205-WQH-BGS