1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10
11

VEGAS DIAMOND PROPERTIES,
LLC, a Nevada Limited Liability
Company,

CASE NO. 10cv1205-WQH-BGS

ORDER

12

                                        Plaintiff,

13

        vs.

14

OMAR BENJAMIN WIGGINS, an
individual,

15

                                        Defendant.

16

HAYES, Judge:

17

        The matter before the Court is the Motion for Summary Judgment filed by Defendant

18

Omar Benjamin Wiggins.  (ECF No. 117).

19

**BACKGROUND**

20

**I.        Procedural Background**

21

        On January 8, 2010, Plaintiffs Vegas Diamond Properties, LLC ("Vegas Diamond") and

22

Johnson Investments, LLC initiated this action by filing a Complaint in Nevada state court

23

against La Jolla Bank and Action Foreclosure Services.  (Ex. A, ECF No. 1-2).  On January

24

13, 2010, Defendants removed the action to the United States District Court for the District of

25

Nevada.  (ECF No. 1).  On April 22, 2010, the Federal Deposit Insurance Corporation

26

("FDIC") moved to be substituted as receiver for La Jolla Bank and moved for a change of

27

venue to the Southern District of California.  (ECF Nos. 15, 16).  On June 3, 2010, the FDIC

28

was substituted as receiver, and the action was transferred to this Court.  (ECF No. 24).

On July 14, 2011, Plaintiffs filed a First Amended Complaint ("Complaint") against Defendants La Jolla Bank, the FDIC as receiver for La Jolla Bank, Action Foreclosure Services, Omar Benjamin Wiggins, Rick Hall, Martin Rodriguez, Frank Warren, R.W. Loveless, and Lynn Hein. (ECF No. 94). The Complaint relates to loans made by La Jolla Bank to Plaintiffs, the proceeds of which Plaintiffs loaned to real estate developer Robert Dyson for use on a development project in Anza, California. Plaintiffs allege that Defendants concealed material information regarding problems with the Anza project and Dyson's lengthy financial history with La Jolla Bank. Plaintiffs allege that Wiggins was "an accountant/ bookkeeper" for Dyson who was "intricately involved" with Dyson and La Jolla Bank "to the detriment of Plaintiffs" in negotiating and structuring the subject loans. *Id.* at ¶¶ 5, 30. Plaintiffs allege claims against Wiggins for: (1) fraudulent concealment; (2) negligence; (3) civil conspiracy; (4) aiding and abetting deceit; (5) intentional misrepresentation; and (6) tortious breach of the implied covenant of good faith and fair dealing.

On January 5, 2012, the claims of Plaintiff Johnson Investments, LLC were dismissed for failure to substitute counsel in compliance with Civil Local Rule 83.3. (ECF No. 130).

On December 14, 2011, Defendant Frank Warren was dismissed from the case without opposition from Plaintiffs. (ECF No. 124). On February 9, 2012, Defendants Action Foreclosure Services, Rick Hall, Martin Rodriguez, R.W. Loveless, and Lynn Hein were dismissed on the grounds that Plaintiffs failed to serve those defendants. (ECF No. 136). On February 28, 2012, Defendant FDIC, as Receiver for La Jolla Bank, was dismissed pursuant to 12 U.S.C. § 1823(e). (ECF No. 141).

On November 21, 2011, Defendant Wiggins filed a Motion for Summary Judgment asserting that he did not knowingly conceal any facts or make any false statements regarding the subject loans and that Plaintiff Vegas Diamond was aware of all material facts relating to the loans. (ECF No. 117). Defendant asserts that he was "only an independent contractor who provided services to the companies owned by Robert Dyson" and that he "was not present nor involved in any discussions or negotiations between Mr. Tarkanian [principal to Vegas Diamond], Mr. Dyson, and La Jolla Bank." (ECF No. 117-2 at 4).

1    On December 14, 2011, Plaintiff filed an opposition to the Motion for Summary

2    Judgment, contending that "there were special circumstances imparting a duty upon Wiggins

3    to disclose certain material facts to Plaintiff."  (ECF No. 122 at 16).  Plaintiff contends that

4    Dyson and Wiggins "acted as agents for [La Jolla Bank] in negotiating the loan with Plaintiff"

5    and that "such a relationship imparted fiduciary duties upon Wiggins."  *Id.*

6    On December 20, 2011, Defendant Wiggins filed a reply.  (ECF No. 125).

7    **II.    Undisputed Facts**

8    Plaintiff Vegas Diamond and Johnson Investments each owned property in Las Vegas,

9    Nevada.  Vegas Diamond and Johnson Investments took out loans with La Jolla Bank totaling

10   over $25 million, secured by their respective properties, and loaned the proceeds to developer

11   Robert Dyson to be used for a real estate project in Anza, California.  The ability of Vegas

12   Diamond to repay their loan from La Jolla Bank was dependent on the ability of Dyson to

13   repay his loan from Vegas Diamond.  Dyson was unable to repay the loans from Vegas

14   Diamond, and the respective properties were foreclosed upon in March 2011.

15   In support of his motion for summary judgment, Defendant Wiggins submitted a signed

16   declaration stating, in part:

17       2. I was an independent contractor who provided services to the companies
         owned by Robert Dyson. I was not Mr. Dyson's accountant or bookkeeper. At
18       the request of both Mr. Dyson and Danny Tarkanian, I sometimes acted as a
         go-between, including sometimes transmitting messages, delivering documents
19       and obtaining signatures. I also prepared worksheets and paperwork related to
         the Anza Project which were requested by Mr. Dyson and Mr. Tarkanian.
20       However, at no time did I knowingly conceal any facts or make any false
         statements.
21
22       3. I was not present nor involved in any discussions or negotiations between Mr.
         Tarkanian, Mr. Dyson and La Jolla Bank. I did not negotiate with La Jolla Bank
23       or anyone else. I never did any work for La Jolla Bank. I did not conduct or
         participate in any loan negotiations on behalf of anyone. I did not restructure any
24       loan for Mr. Johnson or anyone else. I did not participate in any decision making
         relating to Mr. Dyson's business, La Jolla Bank's business... or the Anza Project.
25       4. I did not act knowingly to conceal or misrepresent anything, did not conspire
26       with anyone, and did not commit any acts in furtherance of any common design.

27       5. In addition, based upon my conversations with Mr. Johnson, Mr. Tarkanian
         and Mr. Dyson, it was apparent to me that the true facts relating to the loans on
         the project, the use of loan proceeds, the delays with the project, the political
28       climate in the Anza Valley, and all the other matters... [that] Plaintiffs allege
         constituted wrongful concealment, were actually known by Mr. Tarkanian

1   and/or his legal counsel at the time.

2   (Wiggins Declaration; ECF No. 117-3).

3         Danny Tarkanian, managing member of Plaintiff Vegas Diamond, submitted a signed

4   declaration in opposition to Defendant Wiggins' motion for summary judgment, stating in part:

5       5. Beginning in 2007, during the course of dealings leading up the loan

6   transaction [between La Jolla Bank (hereinafter "LJB") and Vegas Diamond], Defendant, Ben Wiggins (hereinafter "Mr. Wiggins") was directly involved in all aspects of the loan transaction on a day to day basis on behalf of Mr. Dyson.

7   

8   6. Mr. Wiggins was the point of contact for Mr. Dyson.

9   7. Mr. Wiggins was involved in virtually every meeting which was held between Vegas Diamond and Mr. Dyson.

10  8. Mr. Wiggins was acting as a chief financial officer and accountant for Mr. Dyson throughout the course of dealing on the loan transaction.

11  

12  9. Mr. Wiggins provided Mr. Dyson's financial documents to Vegas Diamond.

13  10. In providing Vegas Diamond the financial documents, Mr. Wiggins reviewed the financial documents with Vegas Diamond and explained them to Vegas Diamond.

14  

15  11. In reviewing and explaining the financial documents of Mr. Dyson to Vegas Diamond, Mr. Wiggins emphasized the financial strength of Mr. Dyson and always made it look as though Mr. Dyson had a lot of money.

16  

17  12. Mr. Wiggins often informed Vegas Diamond that LJB was requesting certain documents or other paperwork from Vegas Diamond.

18  13. Mr. Wiggins often reworked the financial paperwork of Vegas Diamond saying this is how it is to be done as required by LJB.

19  

20  14. Mr. Wiggins would collect the documents and other paperwork which were requested by LJB and delivered them to LJB.

21  15. Mr. Wiggins inferred that he had been involved in the project in Anza, California for a long time with Mr. Dyson.

22  

23  16. Mr. Wiggins told Vegas Diamond about the project in Anza, California, and told Vegas Diamond how exciting the project was and the great potential and prospects it had.

24  

25  17. Mr. Wiggins made representations that the project in Anza, California was a great investment.

26  18. Mr. Wiggins never informed Vegas Diamond of any real problems with the project in Anza, California and minimized the impact and extent of any problems he may have disclosed.

27  

28  19. Mr. Wiggins never informed Vegas Diamond that there were problems with the political climate in Anza which was against the project, and there was

1    opposition from the local Native Americans against the project.

2    20. Mr. Wiggins discussed that there was a water right issue, but minimized any
3    adverse impact of the issue by producing reports showing there was sufficient
     water.

4    2l. Mr. Wiggins never informed Vegas Diamond that the problems with the
     project in Anza, California were present prior to 2005.
5

6    (Tarkanian Declaration; ECF No. 122-2).

7        Robert Dyson gave the following deposition testimony in this case:

8        Q. ... what is your current relationship with Mr. Wiggins?
         A. He still does – well, he doesn't now. We have someone else doing the
9        accounting. Our relationship pretty much are friends and I counsel with him on
         occasion.
10       Q. ... between, let's say, 2001 and October 30, 2008, what was your relationship
         with Mr. Wiggins?
11       A. Very active. He was instrumental in preparing us in various activities in our
         real estate operation.
12       Q. Can you be more specific?
         A. He comes more from the accounting side. I come from the marketing side. So
13       he – he brought that – those talents to the table in various projects that we
         worked on....
14       A. ... he managed our money and did a significant amount of reporting....
         Q. Was Mr. Wiggins your personal tax accountant?
15       A. He's not an accountant.
         Q. ... What is his professional background?
16       A. Um, he has a degree, I believe, in accounting. And I think you will have to
         ask him as far as that's concerned. He just did a great job for us....
17       A. Again, Ben Wiggins handled our accounting....
         Q. Now, Mr. Wiggins, he owned a company called Master Management?
18       A. Master Management....
         Q. What type of company was it?
19       A. I don't know. I mean, it was accounting....
         Q. ... What type of business?
20       A. It was an accounting business. He did a lot of our accounting and fund
         control.
21       Q. Was he a CPA?
         A. No, sir....
22       Q. More of a bookkeeper type?
         A. Yes.

23   (Dyson Deposition Transcript; ECF No. 122-2).   Tarkanian's declaration and Dyson's

24   deposition testimony constitute the entirety of Plaintiff's evidence submitted in opposition to

25   summary judgment.

26   **III.    Standard of Review for Summary Judgment**

27        "A party may move for summary judgment, identifying each claim or defense–or the

28   part of each claim or defense–on which summary judgment is sought.  The court shall grant

summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A material fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).  The materiality of a fact is determined by the substantive law governing the claim or defense. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party has the initial burden of demonstrating that summary judgment is proper. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970).  The burden then shifts to the opposing party to provide admissible evidence beyond the pleadings to show that summary judgment is not appropriate. *See Celotex*, 477 U.S. at 322, 324.  To avoid summary judgment, the opposing party cannot rest solely on conclusory allegations of fact or law. *See Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986).  Instead, the nonmovant must designate which specific facts show that there is a genuine issue for trial. *See Anderson*, 477 U.S. at 256. The opposing party's evidence is to be believed, and all justifiable inferences are to be drawn in their favor. *See id; see also Matsushita,* 475 U.S. at 587 (holding that any inferences from the underlying facts must be viewed in light most favorable to the non-moving party).

## DISCUSSION

### A.      Fraudulent Concealment

Defendant asserts that he was "only an independent contractor who provided services to the companies owned by Robert Dyson" and that he "was not present nor involved in any discussions or negotiations between Mr. Tarkanian, Mr. Dyson, and La Jolla Bank." (ECF No. 117-2 at 4).  Defendant asserts that he did not knowingly conceal any facts or make any false statements, and that Danny Tarkanian was aware of all material facts relating to the loan on the Anza Project.  Defendant denies ever making false statements or concealing facts.

Plaintiff asserts that Defendant, as Dyson's accountant, "was intimately familiar" with Dyson's finances and "keenly aware" of Dyson's close relationship with La Jolla Bank and troubled position with the Anza project. (ECF No. 122 at 15, 16).  Plaintiff asserts that

1   Defendant attended every meeting with Tarkanian and Dyson and made positive statements

2   regarding the prospects of the Anza project.  Plaintiff asserts that Defendant "knew with

3   certainty that Dyson was encountering severe resistance and trouble in proceeding with the

4   Anza project" and "did not bother to inform Plaintiff of these salient facts." *Id.* at 16, 17.

5   Plaintiff contends that these "were special circumstances imparting a duty upon Wiggins to

6   disclose certain material facts to Plaintiff." *Id.* at 16.   Plaintiff contends that Defendant

7   "consciously concealed relevant, material facts that would have dissuaded Plaintiff from

8   entering into the [loan] transaction." *Id.* at 15.

9          The elements of a cause of action for fraud based on concealment are: (1) the defendant

10  must have concealed or suppressed a material fact, (2) the defendant must have been under a

11  duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed

12  or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been

13  unaware of the fact and would not have acted as he did if he had known of the concealed or

14  suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff

15  must have sustained damage. *Bank of America Corp. v. Superior Court,* 198 Cal.App.4th 862,

16  870 (2011) citing *Kaldenbach v. Mutual of Omaha Life Ins. Co.,* 178 Cal.App.4th 830, 850,

17  (2009).  When concealment is the basis for the fraud claim, the plaintiff must first establish that

18  the defendant had a duty to disclose the concealed fact. *Levine v. Blue Shield of California,*

19  189 Cal.App.4th 1117, 1126–1127 (2010).

20         **I.    Duty to Disclose**

21         "One party to a business transaction is under a duty to exercise reasonable care to

22  disclose to the other before the transaction is consummated, ... facts basic to the transaction,

23  if he knows that the other is about to enter into it under a mistake as to them, and that the other,

24  because of the relationship between them, the customs of the trade or other objective

25  circumstances, would reasonably expect a disclosure of those facts." *Eddy v. Sharp,* 199

26  Cal.App.3d 858, 864 (1988) quoting Restatement (Second) Torts, § 551(2)(e).  "[A] duty to

27  disclose a material fact normally arises only where there exists a confidential relation between

28  the parties or other special circumstances require disclosure...." *Shafer v. Berger, Kahn,*

*Shafton, Moss, Figler, Simon & Gladstone,* 107 Cal.App.4th 54, 71 (2003) quoting *Cicone v. URS Corp.*, 183 Cal.App.3d 194, 201 (1986).   There are four circumstances in which nondisclosure or concealment may constitute actionable fraud: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts.   *Bank of America,* 198 Cal.App.4th at 870-71, quoting *LiMandri v. Judkins*, 52 Cal.App.4th 326, 336 (1997).

In this case, Defendant presents evidence that Defendant was an "independent contractor" hired by Dyson who was not involved in loan negotiations among Dyson and La Jolla Bank.  (ECF No. 117-3 at ¶ 2).  Plaintiff presents evidence that Defendant was "chief financial officer and accountant" for Dyson's real estate business who was "directly involved in all aspects of the loan transaction" including providing, reviewing, reworking, collecting, and delivering financial documents.  (ECF No. 122-2 at ¶¶ 5, 8).  Viewing the evidence in the light most favorable to Plaintiff, Defendant was an employee operating under the instruction of Dyson.  There is no evidence that Defendant was employed or contracted by La Jolla Bank or Vegas Diamond as an accountant, bank officer, or independent contractor.  Viewing the evidence in the light most favorable to Plaintiff, Defendant handled financial and administrative paperwork for Dyson.  Defendant handled certain finances for Dyson, a developer who sought funding for his real estate project by facilitating a loan from La Jolla Bank to Plaintiff, who would then loan the proceeds to Dyson.  Plaintiff has submitted no facts to show that Defendant was in a fiduciary relationship with Plaintiff.

Plaintiff further contends that Defendant had exclusive knowledge of material facts, asserting that Defendant was "keenly aware" and "knew with certainty" that Dyson had a long-term relationship with La Jolla Bank and that there were problems with the Anza project. (ECF No. 122 at 16).  In support of this contention, Plaintiff offers the declaration testimony of Tarkanian who states that Defendant "emphasized the financial strength of Mr. Dyson," "inferred that [Defendant] had been involved in the project in Anza, California for a long

1   time," "told Vegas Diamond how exciting the project was," and "made representations that the

2   project in Anza, California was a great investment."  (ECF No. 122-2 at ¶¶ 11, 15, 16, 17).

3   Tarkanian states that Defendant "never informed Vegas Diamond that there were problems

4   with the political climate in Anza which was against the project, and there was opposition from

5   the local Native Americans against the project," and that Defendant "minimized the impact and

6   extent of any problems he may have disclosed."  *Id.* at ¶¶ 18, 19.  Defendant states that, based

7   on Defendant's interaction with Tarkanian, "the true facts relating to the loans on the project,

8   the use of loan proceeds, the delays with the project, the political climate in the Anza Valley,

9   and all other matters" were known by Tarkanian and by Tarkanian's counsel.

10         Viewed in the light most favorable to Plaintiff, Tarkanian's declaration testimony does

11   not provide evidence that Defendant had exclusive knowledge of material facts not known to

12   Plaintiff.  Tarkanian states that Defendant did not inform him of certain problems associated

13   with the Anza project, but Tarkanian fails to state that he was not aware of those problems and

14   fails to identify any fact that Defendant knew that Tarkanian did not know.  Bare contentions

15   in Plaintiff's legal memoranda that Defendant "knew with certainty" of problems surrounding

16   the Anza project is insufficient to defeat summary judgment.  See *S.S. Empresa De Viacao*

17   *Aerea Rio Grandense v. Walkter Kidde & Co.,* 690 F.2d 1235, 1238 (9th Cir. 1980) ("A party

18   cannot manufacture a genuine issue of material fact merely by making assertions in its legal

19   memoranda."); *National Steel Corp. v. Golden Eagle Ins. Co.*, 121 F.3d 496, 502 (9th Cir.

20   1997) (holding that allegations without factual support "are insufficient to defeat summary

21   judgment.").

22         Tarkanian states that Defendant "emphasized the financial strength of Mr. Dyson" and

23   "made representations that the project in Anza, California was a great investment," but that

24   Defendant "never informed" Plaintiff of the political climate or local opposition to the Anza

25   project.  (ECF No. 122-2 at ¶¶ 11, 17, 19).  Plaintiff provides no evidence or factual support

26   to show that Defendant "actively" concealed or suppressed any information from Plaintiff

27   regarding any problems which would affect Anza investment.  *See Bank of America,* 198

28   Cal.App.4th at 870-71.  Plaintiff provides no evidence showing that the Anza project was not

a great investment, or that local opposition and political tensions surrounded the project.

Defendant has come forward with evidence to show that Defendant did not owe any duty to disclose to Plaintiff.  Plaintiff has failed to produce evidence of material facts to show a fiduciary relationship or special circumstances that would impose such a duty.  Accordingly, Defendant is entitled to summary judgment on the claim for fraudulent concealment.

## II.    Justifiable Reliance

Even if Plaintiff's evidence established that a duty was owed by Defendant to disclose certain facts regarding the Anza project, the evidence fails to show that Plaintiff was unaware of the political and social problems with the Anza project, or that Plaintiff would have acted differently had he known or been informed of such problems.  Tarkanian fails to state that he was unaware of any material facts or that he relied on the concealment of material facts in taking out the subject loan with La Jolla Bank.  Plaintiff asserts in its opposition papers that "[w]hether Plaintiff would have entered into the loan had Dyson, Wiggins and LJB been honest and forthright in the information and documents they provided... will never be known." (ECF No. 122 at 20).  Plaintiff fails to provide evidence of the fourth element of fraudulent concealment which requires that Plaintiff be unaware of the concealed facts and would have acted differently with knowledge of the concealed facts.  See *Bank of America Corp.,* 198 Cal.App.4th at 870.  Accordingly, Defendant is entitled to summary judgment on the claim for fraudulent concealment.

## B.    Negligence

Defendant contends that the negligence claim based on concealment is not actionable under California law absent a duty of disclosure, and that Defendant had no such duty because of his limited involvement in the transactions between Plaintiff, La Jolla Bank, and Dyson. Plaintiff asserts that Defendant "was involved in all aspects of the loan transaction" and "participat[ed] with Dyson and [La Jolla Bank] in negotiations with Plaintiff for the loan." (ECF No. 122 at 18, 19).  Plaintiff contends that Defendant's relationship with Dyson, La Jolla Bank, and Plaintiff created "obligations" and a duty to Plaintiff that was breached when Defendant failed to disclose material facts about the transaction.  *Id.*

1   The elements of a cause of action for negligence are: (1) a legal duty to use due care;

2   (2) a breach of such legal duty; and (3) the breach was the proximate or legal cause of (4) the

3   resulting injury. *Walker v. Sonora Regional Medical Center*, 202 Cal.App.4th 948, 958 (2012)

4   quoting *Ladd v. County of San Mateo,* 12 Cal.4th 913, 917–918 (1996).   Duty, thus, "is an

5   essential element of a negligence cause of action." *Id.*  "Since the existence of a duty of care

6   is an essential element in any assessment of liability for negligence, entry of summary

7   judgment in favor of the defendant in a negligence action is proper where the plaintiff is unable

8   to show that the defendant owed such a duty of care." *Clarke v. Hoek,* 174 Cal.App.3d 208,

9   213–214 (1985) (citations omitted).

10   Viewing the evidence in the light most favorable to Plaintiff, Defendant was an

11   accountant for Dyson, a real estate developer seeking funding for his project in Anza,

12   California.   Defendant handled the financial paperwork for Dyson and made optimistic

13   statements about Dyson's real estate development projects to Plaintiff. The evidence presented

14   by Plaintiff fails to establish that Defendant owed Plaintiff any duty of care or that special

15   circumstances existed that would establish such a duty.  Plaintiff further fails to provide the

16   causation element of a negligence claim because Plaintiff has not come forward with evidence

17   that the alleged breach - the failure to disclose material facts - resulted in damages to Plaintiff.

18   Accordingly, Defendant is entitled to summary judgment on the claim for negligence.

19   **C.   Intentional Misrepresentation**

20   Defendant asserts that he did not knowingly conceal any facts or make any false

21   statements and that Tarkanian was aware of all material facts relating to the loans on the Anza

22   project.   Plaintiff contends that Defendant had a duty to disclose certain material facts to

23   Plaintiff and that concealment of such facts is construed under California law as

24   misrepresentation.

25   Under California law, "[t]he elements of intentional misrepresentation, or actual fraud,

26   are: '(1) misrepresentation (false representation, concealment, or nondisclosure); (2)

27   knowledge of falsity (scienter); (3) intent to defraud (i.e., to induce reliance); (4) justifiable

28   reliance; and (5) resulting damage.'" *Anderson v. Deloitte & Touche,* 56 Cal.App.4th 1468,

1474 (1997) quoting *Molko v. Holy Spirit Assn.,* 46 Cal.3d 1092, 1108 (1988).  "The general

rule for liability for non-disclosure is that even if material facts are known to one party and not

the other, failure to disclose those facts is not actionable fraud unless there is some fiduciary

or confidential relationship giving rise to a duty to disclose." *La Jolla Village Homeowners'*

*Assn. v. Superior Court*, 212 Cal.App.3d 1131, 1151 (1989) (disapproved on other grounds by

*Jimenez v. Superior Court,* 29 Cal.4th 473, 479-80 (2002)); see also 5 Witkin, *California*

*Procedure* (4th ed. 1997) Pleading, § 678, p. 136 ("Mere nondisclosure is ordinarily not

actionable unless the defendant is a fiduciary with a duty to disclose, in which case the fraud

is constructive.").

Plaintiff fails to establish that Defendant had a duty to disclose or to show that a

confidential or fiduciary relationship existed giving rise to such a duty.  To the extent that

Defendant had a duty not to make false statements with the intent to defraud Plaintiff, Plaintiff

has failed to provide evidence that any statements made by Defendant regarding the Anza

project were false or that the allegedly concealed facts were true.  There is no evidence to show

that an intentional misrepresentation was made by Defendant.  Moreover, Plaintiff fails to

provide evidence that Plaintiff relied on the concealed or undisclosed facts.  Defendant is

entitled to summary judgment on the claim for intentional misrepresentation.

**C.      Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing**

Defendant contends that "only a plaintiff with a contractual relationship with the

defendant can assert a tort claim based upon its breach," and that Defendant was not a party

or participant to any of the loan transactions involved in this case.  (ECF No. 117-2 at 10).

Plaintiff reiterates its argument of fraud, contending that "there were special circumstances

imparting a duty upon Wiggins to disclose certain material facts to the Plaintiff." (ECF No.

122 at 23).  Plaintiff contends that Defendant "was in a superior, entrusted position and that

[Plaintiff] relied upon [Defendant's] fiduciary obligations of full disclosure as the predicate

for their claims."  *Id.*

Under California law, "[a] cause of action for tortious breach of the covenant of good

faith and fair dealing requires the existence and breach of an enforceable contract as well as

1   an independent tort." *Innovative Business Partnerships, Inc. v. Inland Counties Regional*

2   *Center, Inc.,* 194 Cal.App.4th 623, 631-632 (2011); *see also Kruse v. Bank of America,* 202

3   Cal.App.3d 38, 57 (1988) ("The inherent precondition to such a tort claim is the existence and

4   breach of an enforceable contract.").  In addition, "[g]enerally, no cause of action for the

5   tortious breach of the implied covenant of good faith and fair dealing can arise unless the

6   parties are in a 'special relationship' with 'fiduciary characteristics.'" *Pension Trust Fund for*

7   *Operating Engineers v. Federal Ins. Co.*, 307 F.3d 944, 955 (2002) quoting *Mitsui Mfrs. Bank*

8   *v. Superior Court*, 212 Cal.App.3d 726, 730 (1989).

9        There is no evidence that any contract existed between Plaintiff and Defendant in this

10   case.  As discussed above, Plaintiff has failed to submit evidence that an independent tort was

11   committed by Defendant or that a special relationship with fiduciary characteristics existed

12   between Plaintiff and Defendant.  Accordingly, Plaintiff's claim for tortious breach of the

13   covenant of good faith and fair dealing cannot survive summary judgment.

14   **D.    Civil Conspiracy, Aiding and Abetting Deceit**

15        Defendant denies conspiring with anyone or acting in furtherance of any common

16   design with others to defraud or misrepresent facts to Plaintiff.  Plaintiff contends that

17   Defendant, Dyson, and La Jolla Bank "participated together to induce Plaintiff in taking a

18   loan" and that Defendant "actively pushed" Plaintiff to take out the subject loan while

19   concealing material facts about the transaction.

20        Under California law, a conspiracy standing alone does no harm and engenders no tort

21   liability. *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.,* 7 Cal.4th 503, 511 (1994).  "A

22   civil conspiracy, however atrocious, does not per se give rise to a cause of action unless a civil

23   wrong has been committed resulting in damage." *Id.* (citations omitted).  "By its nature, tort

24   liability arising from conspiracy presupposes that the coconspirator is legally capable of

25   committing the tort, i.e., that he or she owes a duty to plaintiff recognized by law and is

26   potentially subject to liability for breach of that duty." *Id.*  Similarly, liability for aiding and

27   abetting the commission of an intentional tort may be imposed upon a person who "(a) knows

28   the other's conduct constitutes a breach of duty and gives substantial assistance or

encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." *Saunders v. Superior Court*, 27 Cal.App.4th 832, 846 (1994).

Plaintiff has failed to establish any of its claims alleging that an intentional tort was committed by Defendant.  Plaintiff has additionally failed to establish that a duty existed between Defendant and Plaintiff either under a theory of fiduciary relationship or special circumstances.  Accordingly, Plaintiff's claims for conspiracy and aiding and abetting deceit cannot survive summary judgment.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion for Summary Judgment filed by Defendant Omar Benjamin Wiggins (ECF No. 117) is GRANTED.  The claims against Defendant Wiggins are dismissed.  The Clerk of the Court is instructed to close the case.

DATED:  April 18, 2012

**WILLIAM Q. HAYES**
United States District Judge